CONSTRUCTION TECHNOLOGY,
INC., Plaintiff,

v.

The LOCKFORMER COMPANY, INC., Met–Coil Systems Corp., Mechanical Data, Inc., Estimation, Inc., Lion International Company d/b/a Orange Systems, and Orange Systems/Lockmer, Defendant.

No. 88 Civ. 0742 (MBM).

United States District Court,
S.D. New York.

Jan. 10, 1989.

George E. Badenoch, Edward W. Greason, Louis C. Dujmich, Mark D. Giarratana, Kenyon & Kenyon, Irwin P. Underweiser, Jay H. Landau, John Byrne, Underweiser & Underweiser, New York City, for plaintiff.

Thomas L. Abrams, Jones, Day, Reavis & Pogue, New York City, Clarence J. Fleming, Cheryl L. Urbanski, Jones, Day, Reavis & Pogue, Chicago, Ill., Robert P. Ducatman, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendants Lockformer Co., Inc. and Met–Coil Systems.

Gary S. Jacobson, Kristine M. Reddington, Jacobson & Triggs, New York City, for defendant Mechanical Data.

Robert R. Bowie, Jr., White, Mindel, Clarke & Hill, Towson, Md., Gary S. Jacobson, Jacobson & Triggs, New York City, for defendant Estimation, Inc.

Stephen H. Galebach, Gregory J. Granitto, West & Galebach, Gaithersburg, Md., David J. Grais, Kaare Phillips, Grais & Richards, New York City, for defendant Lion Intern. Co. d/b/a Orange Systems.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Construction Technology, Inc. ("CTI") filed this action against five answering defendants—Lockformer Company, Inc., Met–Coil Systems Corp., Mechanical Data, Inc., Estimation, Inc., and Lion International Co. d/b/a Orange Systems ("Orange Systems").[1] The amended[2] com-

---

1. A sixth defendant, "Orange Systems/Lockmer," does not exist and is dismissed from this case.

2. The amended complaint was filed on April 12, 1988 and differs from the original complaint, filed on February 2, 1988, only in substituting

plaint alleges eight claims for relief, denominated "counts," against them. Count I is unfair competition and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Count II is for deceptive practices and false advertising under New York General Business Law, §§ 349 and 350. Count III alleges common law unfair competition and false advertising. Count IV alleges common law misappropriation of technology. The first four causes of action are alleged against all defendants. The last four involve only two defendants, Lockformer and Mechanical Data. In count V, plaintiff alleges that these two defendants induced breach of plaintiff's contract with Interactive Computer Systems ("ICS") as well as interfered with its advantageous business relationship with ICS (Count VI). The seventh count alleges that the two defendants conspired to commit the aforementioned acts. The final claim is for conduct of an enterprise through a pattern of racketeering activity ("RICO"). 18 U.S.C. § 1961 et seq. This court has subject-matter jurisdiction for the Lanham Act claim under 28 U.S.C. §§ 1331 and 1338, for the RICO claim under 18 U.S.C. § 1965(a) and pendent jurisdiction of the state law claims.[3] This lawsuit has been consolidated with a related patent infringement action against Lockformer, *Construction Technology, Inc. v. Lockformer Company*, 86 Civ. 0457 (MBM), (S.D.N.Y.1989).

The activities that inspired this lawsuit are set forth in detail below. Basically, plaintiff is a designer of systems to automate the process of designing and manufacturing heating, ventilating and air conditioning ("HVAC") ducts used in buildings. Plaintiff has designed three systems—the Compuduct, the Auto–Plot, and the Auto–Plan—the last two of which are the subject of the above patent infringement action. Defendants are competitors in this market and are alleged to have conspired to appropriate plaintiff's trade secrets and to have engaged in false comparative advertising.

Lion International Company, d/b/a Orange Systems, for Orange Systems, Inc.

Defendants now move to dismiss each of the claims. Although one defendant suggests that this may be considered a summary judgment motion, all parties agree—as do I—that these motions are more properly made pursuant to Fed.R.Civ.P. 12(b).

### Venue

■ Defendant Orange Systems moves for dismissal because of improper venue. Venue is proper in this district only if plaintiff's claims against Orange Systems arose in this district, 28 U.S.C. § 1391(b), or if Orange Systems resides in this district, 28 U.S.C. § 1391(c). Either will suffice to establish venue. As I find that the claim arose here, I do not reach the question whether Orange Systems is doing business here.

Orange Systems argues that the claim did not arise here because the misappropriation occurred in Maryland at its home office. However, the sale or attempted sale in New York of the product wrongfully developed is an independent tort. *See R.F.D. Group Ltd. v. Rubber Fabricators, Inc.*, 323 F.Supp. 521 (S.D.N.Y.1971). Plaintiff has alleged that Orange Systems constructed a computer-assisted design ("CAD") system for Lockformer's Vantage system with confidential information taken from plaintiff. Complaint at ¶¶ 64, 65. Moreover, this defendant is charged also with helping Lockformer to distribute false advertising. Because Orange Systems is alleged to assist in the marketing of Lockformer's Vantage systems in New York, the claim arises just as much here as in Maryland. Indeed, Orange Systems concedes it has helped Lockformer to market Vantage in New York by attending one national trade show and contacting in person five companies in New York state. Van Zutphen Aff. ¶¶ 15–17.

This is thus one of those "unusual cases in which it is not clear that the claim arose in any one district." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 185, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979). In such cases, "a plaintiff may choose be-

**3.** Plaintiff also alleges diversity jurisdiction for the state law claims.

tween those two ... districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim." *Id.*

The claims asserted here revolve around the actions of the two main defendants—Lockformer and Mechanical Data—both of which are alleged to be doing business in New York. Because Orange Systems is alleged to be assisting these two defendants, much of the evidence is equally here and in Illinois, Lockformer's home state, or in Virginia, Mechanical Data's home state, as well as in Maryland. Further, because plaintiff alleges that the technology Orange Systems eventually received was actually procured from a Louisiana company, many of the witnesses and much of the evidence will be there as well. Moreover, although defendant avers that Maryland law is most appropriate to decide the non-federal claims, Memorandum of Defendant Lion Int'l Co. d/b/a Orange Systems in Support of its Motion to Dismiss the Complaint at 34–35, it concedes that New York and Maryland law are identical in defining the claims asserted in the complaint. *Id.* at 15–16. Indeed, all other defendants and plaintiff concede that New York law should apply in this case.[4]

To be sure, I am mindful that litigating here will be somewhat inconvenient to Orange Systems. I recognize also that this defendant may be forced to defend a threatened patent infringement action in Maryland because of the restrictive venue provisions for patent actions, 28 U.S.C. § 1400(b). But the fact remains that the witnesses and evidence in this case are strung out across the country: New York, Louisiana, Massachusetts, Virginia, Maryland, and Illinois. This lawsuit could proceed with "approximately equal plausibility," *Great Western*, 443 U.S. at 185, 99 S.Ct. at 2717, in each of those districts. Accordingly, defendant Orange Systems' motion is denied.

### Motion to Transfer

In the alternative, defendant Orange Systems, now joined by defendant Mechanical Data, requests transfer under 28 U.S.C. § 1404(a) to, respectively, Maryland and Virginia. For the reasons stated above, I find that transfer would be inappropriate in this case. These motions are thus denied as well.

### Count I & III: Lanham Act and Common Law Unfair Competition

These two claims can be discussed in tandem because they involve the same claims of false comparative advertising.

Plaintiff makes three claims of false advertising. First, plaintiff claims that, in June 1981, defendants Mechanical Data and Estimation placed an advertisement in *Snips* magazine falsely claiming that Duct Magic "performs all layout work and pattern drawing." Complaint at ¶ 31. Plaintiff, however, concedes that this advertisement is outside any conceivable statute of limitation, contending instead that it is included solely to show a pattern of predicate acts as part of the RICO claim asserted against Lockformer and Mechanical Data. *See* Plaintiff's Memorandum in Opposition to Defendant Estimation's Motion to Dismiss at 4.

Second, plaintiff asserts that "at an open house in late October 1982, defendants Lockformer, Mechanical Data and Estimation continued their conspiracy to unfairly compete with CTI's Auto–Plot System by, among other unfair and unlawful acts, distributing false and misleading information about CTI and CTI's Auto–Plot System." Complaint at ¶ 42. Specifically, plaintiff alleges that defendants misrepresented that "the Auto–Plot System used more electricity than the Vulcan plasma system" and that "CTI's Auto–Plot System required complete mirror changes twice a year ... and thus was more expensive to maintain than defendants' Vulcan System." Complaint at ¶ 43. Although some of these allegations complain about defendants' dis-

---

**4.** Accordingly, New York law will be applied    throughout this case.

paragement of plaintiff's product, the allegations also complain of false statements made by defendants about defendants' product.

Third, the complaint states that, in June 1985, "copies of a memorandum purportedly comparing the features of the Vantage and Auto–Plan Systems were being distributed by agents of Lockformer and that this memorandum ... misled prospective purchasers into believing that the Vantage System was competitively superior to the Auto–Plan System and resulted in a diversion of sales from CTI to defendants." Complaint at ¶ 69. This is at once a false advertising claim, because plaintiff alleges that defendant misrepresented the quality of its own product, and a disparagement claim, because plaintiff alleges that defendants made unfair comments about plaintiff's product.

### A. *Common Law Unfair Competition*

■ Defendants Estimation and Mechanical Data argue that the common law count fails to state a claim and, in the alternative, is barred by the applicable state statute of limitations. As I find that this count fails to state a claim for relief, I do not reach the statute of limitations question.

Plaintiff wisely does not insist that defendants' false claims about defendants' own product are actionable under common law. Common law unfair competition is limited to misrepresenting the origin of goods—so-called "palming off." Misrepresentation of the quality of defendants' own product, absent proof of actual damage to plaintiff's business, is not actionable at common law. *See, Johnson & Johnson v. Carter–Wallace, Inc.*, 631 F.2d 186, 188 (2d Cir.1980); *California Apparel Creators v. Wieder of California, Inc.*, 162 F.2d 893, 899 & n. 9 (2d Cir.1947), *cert. denied*, 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393 (1947); *American Washboard Co. v. Saginaw Mfg. Co.*, 103 F. 281, 285 (6th Cir.1900); *Magnus Organ Corp. v. Robbins Music Corp.*, 163 U.S.P.Q. 695 (N.Y.Sup.Ct.1969). Moreover, in such cases it is impossible to "ascertain whether consumers would have dealt with a particular seller but for the defendant's deceptive advertising." 2 J. McCarthy, *Trademarks and Unfair Competition*, § 27.1 at 336–37 (1984). Accordingly, as plaintiff is a competitor in an open market, no such proof is possible, and plaintiff has no standing to sue.

Rather, in its brief, plaintiff says it seeks recovery for "false representations about [plaintiff's] product, resulting in injury to the [plaintiff's] business." *See* Plaintiff's Memorandum in Opposition to Defendant Orange Systems' Motion to Dismiss or Transfer at 7. Although such false representations do not amount to "palming off," plaintiff argues that *Electrolux Corp. v. Val–Worth, Inc.*, 6 N.Y.2d 556, 161 N.E.2d 197, 190 N.Y.S.2d 977 (1959), establishes a cause of action for unfair competition when defendant has made false representations about plaintiff's product. In *Electrolux*, a defendant vacuum company used plaintiff's name and mark in a "bait and switch" promotion scheme to sell new vacuum cleaners. The court found this method "deceitful ... and contrary to accepted business ethics," and determined that such cases warranted a departure from traditional limitations on the common law of unfair competition. *Electrolux*, 190 N.Y.S. 2d at 987. But *Electrolux* provides no support for plaintiff's assertion that "a cause of action for false advertising is maintainable where defendant has made false representations about another's product." *See* Plaintiff's Memorandum in Opposition to Defendant Orange Systems' Motion to Dismiss or Transfer, 7–8.

■ Rather, plaintiff's claim is more properly one for disparagement of a competitor's goods, actionable at common law. *See, e.g., King Creations Ltd. v. Conde Nast Publications, Inc.*, 34 A.D.2d 935, 311 N.Y.S.2d 757 (1st Dep't 1970). This tort, however, "is normally straitjacketed into the all too narrow frame of libel and slander." 1 R. Callmann & L. Altman, *Unfair Competition, Trademark and Monopolies*, § 2.03 at 10 (4th Ed.1981). Moreover, such an action, like the tort for false advertising of a defendant's own product, requires that "[t]he complaint must refer, with specificity, to the customers who have

ceased to do business with the plaintiff because of the disparaging statements." 2 Callmann & Altman, § 11.15 at 48. *See also Tower v. Crosby,* 214 A.D. 392, 212 N.Y.S. 219 (4th Dep't 1925); *Clark v. Dollinger,* 205 A.D. 231, 199 N.Y.S. 527 (4th Dep't 1923); *Wittemann Bros. v. Wittemann Co.,* 88 Misc. 266, 151 N.Y.S. 813 (Sup. Ct.1914), *aff'd,* 168 A.D. 930, 152 N.Y.S. 1150 (2d Dep't 1915). No such showing is possible here because, as mentioned earlier, a competitor on an open market would find it nearly impossible to demonstrate proof of customer diversion.

Belatedly, plaintiff contends that Count III can also be upheld on the allegations supporting Count IV for misappropriation of trade secrets because misappropriation is often considered one form of unfair competition at common law. *See* Plaintiff's Memorandum in Opposition to Defendant Orange Systems' Motion to Dismiss or Transfer at 8 n. 2. It is difficult to discern which of the following two things plaintiff is trying to do, but it is easy to see that neither makes any sense in this case: a) change the legal label on the facts of Count III as they are stated, or b) change the facts of Count III as stated to the facts of Count IV, and affix a new legal label to them. The operative allegations in a complaint are the ones that assert facts, not the ones that define legal theory. *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 601 (5th Cir.1981) (Wisdom, J.); *Rohler v. TRW, Inc.,* 576 F.2d 1260, 1264 (7th Cir.1978). Because it is neither explained nor apparent how facts which fail to state a cause of action for common law unfair competition can be read to assert misappropriation of trade secrets, there is no point in recasting the legal theory of Count III. Nor does it add any thing to change Count III so as to restate Count IV. Thereupon, Count III is dismissed against all defendants.

### B. *The Lanham Act*

Plaintiff does properly state a claim under the Lanham Act for false comparative statements made by defendants about defendant's own product in 1982 and 1985.[5] *McNeilab, Inc. v. American Home Products Corp.,* 848 F.2d 34 (2d Cir.1988); *PPX Enterprises v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266, 270–71 (2d Cir.1987) (collecting cases).

Contrary to defendant Estimation's contentions, proof of damages at this point is not necessary. Moreover, although plaintiff did not specifically allege that defendant Orange Systems assisted in the misrepresentations, the complaint does allege that "agents of Lockformer" distributed the 1985 memorandum and that Orange Systems "has actively assisted Lockformer in the marketing of the Vantage system." Complaint at ¶ 8. This more than meets the liberal pleading requirements.

However, not all of the allegedly false statements are within the relevant limitations period. Plaintiff concedes that the 1981 advertisement is outside any such period. Furthermore, the allegations regarding the 1982 misrepresentations disclose that they ceased in February 1983, when Lockformer, under the gentle prod of a lawsuit, agreed to distribute a letter correcting them. Complaint at ¶ 46. Thus, at the very latest, the statute of limitations on this claim began to run in February of 1983.

This case thus presents an unusual situation. In most Lanham Act claims, the alleged violations are ongoing, involving either false advertising or the copying of trade dress, such that the statute of limitations is never an issue. An injunction is often the most significant remedy sought. *See generally* D. Stimson, *Statutes of Limitations in Trademark Actions,* 71 Trademark Rep. 605, 615–617 (1981); *see also* 4 Callmann & Altman, § 22.30. This defense in a damage action is not precluded by Congress' failure to include a limitations period in the Lanham Act. *Pepsico, Inc. v. Dunlop Tire & Rubber Corp.,* 578 F.Supp. 196 (S.D.N.Y.1984). Plaintiff here, how-

---

5. Plaintiff specifically disclaims any theory that defendants' imitation of its products is itself actionable. *See* Plaintiff's Memorandum in Op-

position to Defendant Estimation's Motion to Dismiss at 7 n. 5.

ever, seeks both damages and injunctive relief. When the relief sought is injunctive, the defense is more properly based on laches. *See General Signal Corp. v. Donallco, Inc.,* 649 F.2d 169 (2d Cir.1981). However, because courts in analyzing a defense of laches presume that a claim for an injunction is stale if the acts alleged fall outside the applicable statute of limitations, *see Univ. of Pittsburgh v. Champion Products Inc.,* 686 F.2d 1040 (3d Cir.) ("where the '[p]laintiff sleeps on his rights for a period of time greater than the applicable statute of limitations,' the burden of proof shifts to the [p]laintiff to prove the absence of such prejudice as would bar all relief"), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982), the distinction between limitations and laches has little practical effect for any claim beyond the limitations period.

Both sides contend that the most appropriate statute of limitations is CPLR § 213(8), establishing a six year period for "an action based upon fraud." Whatever the parties' contentions, however, the Supreme Court admonishes that, in cases where a federal statute has no statute of limitations and the court must look to state law for the period which best effectuates the federal policy at issue, the court must select "the most appropriate" state statute of limitations. *Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975)). Accordingly, this court must decide which statute of limitations is most appropriate.

In *Pepsico,* 578 F.Supp. at 199–200, the court considered the six-year limitations period for fraud, and the one-year period for libel, and decided that the statute of limitations for fraud was the most appropriate for Lanham Act claims. *Accord Monkelis v. Scientific Systems Services,* 653 F.Supp.

680 (W.D.Penn.1987); *Fox Chemical Co. v. Amsoil, Inc.,* 445 F.Supp. 1355, 1357 (D.Minn.1978); *Amana Refrigeration, Inc., v. Consumers Union of United States, Inc.,* 431 F.Supp. 324 (N.D.Iowa 1977).[6] The court correctly rejected the analogy to defamation because "[a] cause of action for defamation focuses on representations by a defendant about the plaintiff or the plaintiff's goods and services. The gravamen of a section 43(a) claim for false advertising, on the other hand, is that defendant has made 'misrepresentations with reference to the inherent quality or characteristic of [his own] product.'" *Pepsico,* 578 F.Supp. at 200 (quoting *Vidal Sassoon, Inc. v. Bristol–Myers Co.,* 661 F.2d 272, 278 (2d Cir.1981)).

Instead, the court found that the fraud provision was most analogous. Nevertheless, it implicitly acknowledged that the fit was not perfect: "all *or most* of the six elements of common-law fraud appear to be implicated in a claim for false advertising ..." *Pepsico,* 578 F.Supp. at 200 n. 7 (emphasis added). Most glaringly, the element of *scienter* required for fraud actions is missing from false advertising claims. *Pepsico* asserts that the *scienter* element can be found in Lanham Act claims because plaintiffs must establish that such misrepresentations were made by defendant with the expectation that consumers will rely on them, citing *Smith–Victor Corp. v. Sylvania Electric Products, Inc.,* 242 F.Supp. 302, 312 (N.D.Ill.1965). Although one of the six bases for determining likelihood of confusion in a Lanham Act claim is the good faith of the imitator, *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), it is clear that bad faith is not a necessary element of a Lanham Act claim. As the Second Circuit has held, "intentional copying is not a requirement under the Lanham Act. Also, intent is largely irrele-

---

**6.** Two other district courts have been presented with the issue, but did not reach a determination. In *Lanvin Parfums Essential Prods. Co., Inc.,* 80 Civ. 2223 (S.D.N.Y. September 3, 1981), the parties disputed whether a six-year period or a three-year one under CPLR § 214(2) was more appropriate; the court did not reach the issue as

the claim was timely under either. In *Frito Lay, Inc. v. Bachman Co.,* 83 Civ. 4484 slip op. at 7–8 (S.D.N.Y. May 19, 1987) [1987 WL 11555], the parties agreed that a six-year statute of limitations applied and the court accepted their agreement.

vant in determining if consumers likely will be confused as to source. The history of advertising suggests that consumer reactions are usually unrelated to manufacturer intentions." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir.1986); *see also Johnson & Johnson*, 631 F.2d at 189. Rather, the crucial determinant is consumer confusion. As Chief Judge Brieant has explained, "the Lanham Act § 43(a) encompasses more than literal falsehood.... Especially in cases involving advertising based on product comparison, a claimant may succeed by showing that the innuendo or ambiguity in the disputed advertisement would have a tendency to deceive the buying public." *Grant Airmass Corp. v. Gaymar Ind., Inc.*, 645 F.Supp. 1507, 1513 (S.D.N.Y. 1986).

The absence of *scienter* as an element of a Lanham Act claim does not signal merely an imperfect fit between the Lanham Act between the Lanham Act and fraud: rather, the dishonest and legally condemned state of mind known as *scienter* appears to be one of the primary reasons for fraud's long limitations period. A long period is provided to ensure that victims of fraudulent acts, which society strongly condemns, receive redress. Although this lengthy period was also motivated by concern that fraud might not be discovered in a timely fashion, that consideration was largely resolved by the legislature's enactment of CPLR § 203(f), which provides a special limitations period of two years after the actual or imputed discovery of facts regarding fraud. The combined effect of CPLR §§ 213(8) and 203(f) is to establish two separately timed and alternative limitations periods: six years from the commission of fraud, or two years from actual or imputed discovery, whichever is longer. 1 J. Weinstein, H. Horn & A. Miller, *New York Civil Practice*, § 213.25 at 2–177 (1988). A limitations period of two years from discovery would solve any problem caused by delayed discovery of fraud. Therefore, it seems reasonable to conclude that the legislature weighed the value of repose in human affairs which underlies all statutes of limitations, *Bd. of Regents v.*

*Tomanio*, 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980), against the desirability of redressing the consequences of evil behavior, and adopted a six-year limitations period in large part to ensure that fraud is redressed, even if its victims are slow to seek relief.

The Lanham Act, in contrast to common law fraud, is aimed broadly at "unfair competition." 15 U.S.C. § 1127 (1982). It extends from "passing-off" cases to all types of false advertising, including false comparative advertising as in the case at hand. *See Johnson & Johnson*, 631 F.2d at 189. And, as I stated above, there is no need to show knowing falsehood; rather, the issue is whether the acts alleged caused consumer confusion. Moreover, the requirements of standing have been relaxed to the point where any competitor—even an indirect one—is a potential plaintiff—and, concomitantly, any business is a potential target. *Johnson & Johnson*, 631 F.2d at 189–190. Most recently, Congress has seen fit to extend the Lanham Act's reach even further, to cover unfair disparagement of a plaintiff's product. *See* Trademark Law Revision Act of 1988, Pub.L. No. 100–667, 102 Stat. 3935 (1988). It is thus inappropriate to consider Lanham Act cases analogous to fraud claims.

A New York appellate court decision handed down after *Pepsico* concluded that the most appropriate statute for the Lanham act is CPLR § 214(2), which provides a three-year statute of limitations for actions to recover upon a liability imposed by statute. *De Medici v. Lorenzo De Medici, Inc.*, 101 A.D.2d 719, 475 N.Y.S.2d 391 (1st Dep't 1984). CPLR 214(2) is applied when the claim would not exist "but for" the statute. *Klimczak v. Connrex Corp.*, 49 A.D.2d 1031, 374 N.Y.S.2d 497 (4th Dep't 1975). Although the Lanham Act effected a revolution in trademark law, *see Johnson & Johnson*, 631 F.2d at 189, the fact remains that palming off was actionable at common law. Accordingly, because some Lanham Act claims could have been brought at common law, CPLR § 214(2) seems inappropriate as well.

However, there is another statute of limitations that offers a better fit. *Fox Chemical*, 445 F.Supp. at 1357 ("court[s] must look to state law for the period which *best* effectuates the federal policy at issue....") (emphasis added). CPLR § 214(4) provides a three-year statute of limitations for injury to property and it reaches far beyond physical injury to tangible property. CPLR § 214(4) has been applied to common law misappropriation of trade secrets, *M & T Chemicals, Inc. v. International Business Machines Corp.*, 403 F.Supp. 1145 (S.D.N.Y.1975), *aff'd without opinion*, 542 F.2d 1165 (2d Cir. 1976), allegations of secondary boycott under the Labor Management Relations Act, *Associated Imports, Inc. v. Int'l Longshoremen's Ass'n, AFL–CIO*, 609 F.Supp. 595 (S.D.N.Y.1985), alleged interference with prospective business relationships, *Teltronics Services, Inc. v. Anaconda–Ericsson, Inc.*, 587 F.Supp. 724 (S.D.N.Y. 1984), *aff'd*, 762 F.2d 185 (2d Cir.1985), *cert. denied sub nom. Rand v. Anaconda–Ericsson, Inc.*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986), and misappropriation and marketing of a master recording, *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 448 N.E.2d 1324, 462 N.Y.S.2d 413 (1983). The factual thread running through all these cases is damage inflicted by business tactics. Similarly, the Lanham Act is designed to prevent "unfair competition": deceptive marketing tactics which confuse and deceive the consuming public. Furthermore, the Lanham Act, like the causes of action mentioned earlier, requires some proof of damages supplying the necessary element of "injury" to property under CPLR § 214(4). *Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co.*, 349 F.2d 389, 392 (2d Cir.1965) ("a monetary award, whether in the form of damages or an accounting, is justified only to the extent that injury is shown already to have

been suffered"), *cert. denied*, 383 U.S. 942, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966).[7] Accordingly, the three-year statute of limitations under CPLR 214(4) is the most appropriate one for Lanham Act claims. Thus, plaintiff's prayer for damages from false comparative advertising will be limited to the 1985 episode.

The petition for injunctive relief will also be dismissed so far as it requests relief from 1982–83 false advertising. Laches governs here. That defense is addressed to the court's discretion and requires a defendant to show plaintiff's knowledge of the injury and prejudice to defendant from the passage of time. *Dickey v. Alcoa Steamship Co., Inc.*, 641 F.2d 81, 82 (2d Cir.1982). When the delay is longer than the applicable statute of limitations, the burden shifts to plaintiff to prove the "absence of such prejudice to the defendant as would bar all relief." *Champion Products*, 686 F.2d at 1045. Plaintiff has adduced no evidence that defendants are not prejudiced by this intolerable delay. Indeed, to the contrary, plaintiff concedes that Lockformer changed its position and agreed over four years before this lawsuit to distribute a letter "correcting the false and misleading representations about CTI's Auto–Plot System." Complaint at ¶ 46. Thus, even if, as plaintiff alleges, defendants' false statements were made with intent to "deceive consumers into believing defendants' product was competitively superior to CTI's," Complaint at ¶ 43, I find that the equities tip decidedly in defendants' favor and warrant dismissal of these stale claims.

Accordingly, plaintiff's prayer for injunctive relief and damages will be limited to the allegations relating to the 1985 acts. Because only defendants Lockformer, Met–Coil, Mechanical Data, and Orange Systems are alleged to have been involved in the

---

**7.** In an action for damages, this is shown through evidence of actual consumer confusion. *Warner Bros. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir.1981). For injunctive relief, the standard is somewhat less, but plaintiff must still demonstrate a likelihood of consumer confusion. *Coca–Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 316 (2d Cir.1982). For false advertising cases, evidence of consumer confusion is unnecessary when the advertisement is actually false, the theory being that such actual falsity necessarily deceives consumers into buying defendant's product instead of plaintiff's. *PPX Enterprises*, 818 F.2d at 272. Evidence of consumer confusion would thus be unnecessary.

1985 false advertisement, the Lanham Act claim is dismissed as to defendant Estimation.

### Count II: New York General Business Law §§ 349, 350

All defendants join in moving for dismissal of this count for failure to state a claim for relief. They make several arguments: (1) plaintiff has no standing to allege violations of N.Y.Gen.Bus.Law §§ 349, 350; (2) plaintiff has not alleged any act occurring within New York state as the statute requires; and (3) the alleged acts are barred by the statute of limitations. As set forth below, the limitations argument succeeds to the extent of barring recovery for any acts before 1985; the other arguments are less successful.

Section 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business ... in this state ..." and section 350 prohibits "[f]alse advertising in the conduct of any business ... in this state ..." Section 349(h) grants a private right of action to "any person who has been injured by ..." deceptive acts or practices. Similarly, § 350–d provides a private right of action to "[a]ny person who has been injured by reason of ..." false advertising under §§ 350 and 350–a.[8]

Defendants first argue that plaintiff has no standing to sue under these sections because the New York legislature intended these statutes to provide redress solely for aggrieved consumers, not competitors alleging false advertising. It is true, as Judge Weinfeld noted in *Genesco Entertainment v. Koch*, 593 F.Supp. 743, 751 (S.D.N.Y.1984), that "Section 349 wears its purpose on its face; it is entitled 'Consumer Protection From Unfair Acts and Practices.'" However, *Genesco* does not stand for the broad proposition that standing should be limited to consumers. *Genesco*

involved the cancellation of a country and western music concert that the plaintiff sought to hold in Shea Stadium. In dismissing this breach of contract and fraud action, Judge Weinfeld held that "[p]rivate transactions not of a recurring nature or without ramifications for the public at large are not a proper subject of" action under these sections. Thus, the focus is not the status of the plaintiff, but on the nature of the claim asserted. Here, plaintiff claims that defendants engaged in false comparative advertising,[9] a matter certainly affecting the public at large. *See Grant Airmass*, 645 F.Supp. at 1509; *Proctor & Gamble Co. v. Cheesebrough–Pond's Inc.*, 588 F.Supp. 1082, 1083 n. 4 (S.D.N.Y.), *aff'd*, 747 F.2d 114 (2d Cir.1984); *Vitabiotics, Ltd. v. Krupka*, 606 F.Supp. 779, 785 (E.D.N.Y.1984). *See also* R. Givens, *Practice Commentaries on Gen.Bus. §§ 349, 350* at 569 (McKinney 1988) ("direct deception against ordinary consumers where the chief injury is to the consumer rather than competitors, would appear clearly within the scope of Gen.Bus. §§ 349–350.... Inquiry in such cases thus need focus only on whether deception was practiced, not on any separate 'public interest' question. And either the consumer or an injured competitor may sue.").

Defendants, however, argue that the limitation of attorneys' fees solely to victorious plaintiffs demonstrates that the state legislature could not have meant §§ 349 and 350 to apply to cases involving business competitors. Indeed, the Practice Commentaries warns that:

> [C]ontrary to the history of the statutes would seem to be the invocation of GBL §§ 349–350 to support pendent claims in the federal courts in trademark and trade dress infringement suits under the Lanham Act..... Allowing use of GBL §§ 349–350 in such trade identification

---

8. Defendant Lockformer urges dismissal of the § 350 allegation because 350–d was not specifically pleaded. On a Fed.R.Civ.P. 12(b) motion, pleadings are to be liberally construed, especially when they concern a matter of law. I thus read plaintiff's complaint as properly alleging a § 350 cause of action.

9. Plaintiff, in its brief on this question, never claims that the acts of misappropriation of technology in themselves would be actionable, and this cause of action is deemed to be limited to the allegations of false comparative advertising. *See* Plaintiff's Memorandum in Opposition to Defendant Lockformer's Motion to Dismiss, 3–8.

cases would bring the "one-way" *plaintiff* attorney's fee provisions of § 349(h) and § 350–d to bear in a context totally different from that originally contemplated.... GBL §§ 349(h) and 350–d were never intended to affect the American Rule that each side pay its own legal fees....

*Practice Commentaries* at 570–571 (emphasis in original). Certainly, the one-way provision of these sections was designed to protect consumers with limited funds from the "imposition of potentially devastating liability for reasonable defense costs." *Practice Commentaries* at 571. Defendants' argument presumes, however, that plaintiff attorneys' fees are mandatory if the plaintiff is victorious. To the contrary, the awarding of attorneys' fees under these sections remains in the sole discretion of the court. *See, e.g., Beslity v. Manhattan Honda, a Div. of Dah Chong Hong Trading Corp.*, 120 Misc.2d 848, 467 N.Y.S.2d 471 (1st Dep't 1983). Moreover, the Lanham Act itself provides for the award of attorneys' fees in "exceptional" circumstances, 15 U.S.C. § 1117, *see, e.g., Vitabiotics*, 606 F.Supp. at 786, so it is hard to imagine how the addition of GBL claims to a Lanham Act claim will so tip the balance between parties as to lead competitors (or their lawyers) desirous of attorneys' fees or sensing immunity from the imposition of attorneys' fees to stampede the courthouse. Accordingly, I find that plaintiff has standing under Gen.Bus.Law §§ 349 and 350.

To make out a claim under these sections, however, plaintiff must allege fraudulent activities within New York State. *Nardella v. Braff,* 621 F.Supp. 1170, 1173 (S.D.N.Y.1985). Plaintiff claims it has fulfilled this requirement because the complaint makes a general allegation that Lockformer and Met–Coil are "doing business" in New York. Complaint ¶¶ 5, 6. Construing plaintiff's allegations of false comparative advertising in the light most favorable to plaintiff, as I must on this motion, plaintiff could show that, because Lockformer and Met–Coil were engaged in commercial transactions in New York, they were disseminating the false statements here. Its allegations so construed, the complaint states a claim against Lockformer and Met–Coil. Moreover, as the other defendants are alleged to have "assisted" in marketing defendants' products and thus in the dissemination of false advertising in New York, they also are potentially liable.

Defendants argue that some of the alleged acts of false advertising fall outside the statute of limitations. Once again, no statute of limitations is provided in Gen. Bus.Law §§ 349 and 350. The discussion above in connection with the appropriate state statute of limitations for the Lanham Act fully applies here as well. CPLR § 213(8), which governs fraud, is inappropriate for Gen.Bus.Law §§ 349 and 350, because, like the Lanham Act, there is no requirement of intent to defraud under those sections. *See Allstate Ins. Co. v. Foschio*, 93 A.D.2d 328, 332, 462 N.Y.S.2d 44, 46–47 (2d Dep't 1983) (collecting cases). CPLR § 214(2), which applies to liability imposed solely by statute, is also inappropriate because, although §§ 349 and 350, like the Lanham Act, cover a wide spectrum of deceptive practices, actions for "palming-off" and other forms of deceptive trade practices were recognized at common law. Rather, the most appropriate limitations period is CPLR § 214(4) for injury to property. Although consumers have no standing under the Lanham Act as they do under §§ 349 and 350, *Colligan v. Activities Club of New York*, 442 F.2d 686 (2d Cir.), *cert. denied,* 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971), the injury is the same: unfair business tactics causing monetary loss.

Accordingly, plaintiff's cause of action under §§ 349 and 350 will be limited to the allegedly false advertising in 1985. The earlier acts are time-barred. As with the Lanham Act claim, this one too is dismissed as to defendant Estimation because that defendant was never alleged to have been involved in the 1985 false advertising.

### Count IV: Misappropriation

In its fourth count, plaintiff alleges that all defendants misappropriated trade secrets. Defendants Orange Systems and

Mechanical Data move to dismiss this count because the acts complained of are barred by the statute of limitations and fail to state a claim for relief.

The following are the acts of misappropriation contained in the complaint:

1) *Misappropriation of CTI Auto–Plot Technology:* In 1980–82, CTI developed a computerized system for automatically plotting the configuration of each pattern piece of custom designed fitting based solely upon basic input dimensions. In contrast to plaintiff's "Compuduct" and defendant Mechanical Data's "Duct Magic" blanking systems, CTI's new Auto–Plot system automatically laid out the actual pattern of a fitting on a sheet of sheetmetal. Also in contrast to the Compuduct and Duct Magic blanking systems, CTI's new Auto–Plot system eliminated the need for manual layout of pattern pieces by a layout technician. Complaint at ¶ 20. CTI developed the new Auto–Plot system using a plotting table supplied by Gerber Scientific Instrument Co. ("Gerber"). Gerber and CTI entered into a confidentiality agreement on September 12, 1980 in which Gerber agreed to maintain all CTI proprietary information in confidence. Complaint at ¶ 21. A "mock-up" of the system was demonstrated at a trade show in January 1981, generating considerable enthusiasm. Complaint at ¶¶ 22–24. The first fully-operational system was installed in November 1981. Complaint at ¶ 26. On July 28, 1982, CTI filed a patent application, which was subsequently issued on November 19, 1985.

Plaintiff alleges that, sometime in 1982, Cybermation, Inc., a Massachusetts manufacturer of plasma cutting machines for heavy gauge sheetmetal, hired a former Gerber employee with access to CTI proprietary information relating to the Auto–Plot. Complaint at ¶ 35. In July 1982 Cybermation unexpectedly announced that it would market a product similar to CTI's Auto–Plot automatic layout and cutting system using a Cybermation plasma cutter instead of a laser cutter. Complaint at ¶ 36. Defendant alleges that, during that summer, defendants Lockformer and/or Mechanical Data arranged a series of meetings with Cybermation to, *inter alia,* gain access to any CTI technology which Cybermation had learned from the former Gerber employee. Complaint at ¶¶ 36–37. They were successful and introduced their version, called the "Vulcan" system, in October 1982. Complaint at ¶ 39. The Vulcan performed the same automatic layout and plotting function as CTI's Auto–Plot System but used a plasma arc cutter instead of a laser cutter. Complaint at ¶ 39. Lockformer set up this system, entering into an agreement by which Mechanical Data became licensor and supplier of the software program for Lockformer's Vulcan system. Estimation supplied the computer. Complaint at ¶ 40.

2) *Misappropriation of Trade Secrets Regarding the Auto–Plan System:* On or about January 1983, CTI began work on a new computerized system to be combined with Auto–Plot. The new system was designed to enable an HVAC duct work designer to design the duct work for a building project automatically with a computer-assisted drafting (CAD) system by drawing the ducts on a computer screen that shows other features of the building design. Complaint at ¶ 47. Again, CTI entered into a confidential relationship with a computer company, this time Interactive Computer Systems ("ICS"), to develop the Auto–Plan. And again, defendants allegedly conspired to gain access to this information. Specifically, plaintiff alleges that a specially designed CAD System incorporating CTI's proprietary technology was transported from Louisiana to Virginia and delivered to Mechanical Data by ICS on the same day that the TRO was entered in June 1984.

CTI introduced the Auto–Plan System at an October 1983 trade show. Complaint at ¶ 62. CTI also filed a patent application for the new system on September 28, 1983; the patent was issued on November 5, 1985. Complaint at ¶ 62. Defendants Mechanical Data and Lockformer, however, possessed the special technology in the Auto–Plan system and were thus able to copy it, with the help of Orange Systems, which operated as the CAD supplier. Mechanical Data and Lockformer introduced the new product at a Phoenix trade show in October

1984 and called it the Vantage System. Complaint at ¶ 66.

Both sides agree that New York's three-year statute of limitations for injury to property, CPLR § 214(4), ought to apply, *Lemelson v. Carolina Enterprises, Inc.,* 541 F.Supp. 645, 659 (S.D.N.Y.1982), and thus that the alleged acts of misappropriation fall outside this period. Plaintiff, however, avers that the "continuing tort" doctrine saves its claim because each sale of defendants' Vulcan and Vantage systems constitutes a new tort.

■■■ The continuing tort rule as developed by New York state court decisions has been stated as follows:

> If a defendant misappropriates and discloses a trade secret, he becomes liable to plaintiff upon disclosure. On the other hand, if the defendant keeps the secret confidential yet makes use of it to his own commercial advantage, each successive use constitutes a new, actionable tort for the purpose of the running of the Statute of Limitations.

*Lemelson,* 541 F.Supp. at 659. Thus, when a defendant who allegedly misappropriated confidential information publicly discloses that information, the cause of action accrues upon the date of the public disclosure. Similarly, the plaintiff may also start the statute of limitations clock by openly marketing the product or by receiving a patent, which is a public document. The point is simply that once the information is no longer secret or confidential, there is no property to protect.

Plaintiff asserts that the misappropriated information "relat[ed] to the development of CTI's Auto–Plot and Auto–Plan systems." Complaint at ¶¶ 35–37, 51–60. Although no public disclosure was effected through the patent applications since none were issued until well within the three-year statute of limitations (November 1985), plaintiff admits that the Auto–Plot system was installed and operating at its customer's location no later than November 1981 and that it introduced the Auto–Plan system at a trade show in October 1983. Furthermore, plaintiff alleges that defendants first demonstrated the Vulcan system in

October 1982 and the Vantage system in October 1984. Thus, plaintiff's claim would seem to be barred because, at the latest, plaintiff's causes of action relating to Auto–Plot and Auto–Plan began to run, respectively, in October 1982 (Auto–Plot misappropriation) and October 1984 (Auto–Plan misappropriation).

Plaintiff, however, contends that the mere sale of such systems does not constitute public disclosure: "Neither CTI nor defendants publish the details of their programs or reveal them to customers, nor do they reveal the proprietary package of training and know how regarding CTI's programming techniques." Plaintiff's Memorandum in Opposition to Defendant Mechanical Data's Motion to Dismiss at 18. In other words, inspecting the system cannot disclose the technology in question. Taking plaintiff's assertions as truthful, as I must on this motion, the continuing tort doctrine would govern this case, and thus bring the alleged misappropriation within the statute of limitations.

Plaintiff, however, will recover damages only for whatever use was made of the secret before it was made public by the issuance of a patent. After such disclosure, plaintiff's only remedy is a patent infringement action. *See Tempo Instrument, Inc. v. Logitek, Inc.,* 229 F.Supp. 1, 3 (E.D.N.Y.1964).

### A. *Orange Systems and Estimation*

Two defendants, Orange Systems and Estimation, raise another objection to the misappropriation claim against them. They claim that plaintiff has failed to allege a necessary element of misappropriation—that they knew the information passed to them by Mechanical Data or Lockformer was secret. New York courts apply the Restatement of Torts to define the elements of a trade secret claim. *See Rapco Foam, Inc. v. Scientific Applications, Inc.,* 479 F.Supp. 1027 (S.D.N.Y. 1979). In order to state such a claim, it is necessary to allege that (a) defendant "discovered the secret by improper means, or (b) his disclosure or use constitutes a breach of confidence reposed in him by the

other in disclosing the secret to him, or (c) he learned the secret from a third person with notice of the facts that it was a secret and that the third person discovered it by improper means or that the third person's disclosure of it was otherwise a breach of his duty to the other, or (d) he learned the secret with notice of the facts that it was a secret and that its disclosure was made to him by mistake." Restatement of Torts § 757 (1939).

The complaint alleges that Mechanical Data arranged with Orange Systems to complete the design of an imitative CAD system for Lockformer's Vantage product, and that Orange Systems was furnished information "improperly provided by ICS to Mechanical Data from ICS's work with CTI and Orange Systems used such information to complete the design of a CAD duct work design system for Mechanical Data." Complaint at ¶¶ 64–65. Plaintiff, however, has failed to allege that Orange Systems had any notice that the information it allegedly received from Mechanical Data was confidential.

Even sparser are the allegations against Estimation. The only episode of misappropriation that could conceivably involve Estimation, the misappropriation of plaintiff's Auto–Plot technology through Cybermation, contains not one reference to Estimation. *See* Complaint at ¶¶ 35–37. Only in the sense that Estimation is said to have supplied the computer for the resulting imitative product, the Vulcan system, Complaint at ¶ 40, can it be said to have been involved at all. Again, there is no allegation that Estimation had notice of the confidential nature of this information.

A crucial element of the cause of action is thus missing as to both Estimation and Orange Systems. Absent an allegation, this court will not presume knowledge. To fill this gap, plaintiff on this motion has attempted to file a supplemental declaration of Richard Levine after all briefs were submitted on this motion. In the declaration, Levine purports, *inter alia*, to demonstrate that Orange Systems had notice that the information was secret. This declaration was filed without leave of court and in complete disregard of the scheduling order. It will thus not be considered on this motion. Accordingly, the misappropriation cause of action against Orange Systems and Estimation is dismissed without prejudice.

### B. *Mechanical Data*

Defendant Mechanical Data asserts that plaintiff is collaterally estopped to assert this claim because the same issue was litigated in a lawsuit brought in a Louisiana federal court against CTI by Interactive Computer Systems, Inc. ("ICS") in March 1984, in which CTI counterclaimed for breach of contract. Before turning to the Louisiana action, I briefly recapitulate plaintiff's claim against Mechanical Data.

As explained earlier, CTI contracted with ICS to provide CAD systems for its new Auto–Plan product in June 1983. To ensure protection of CTI's confidential information, the contract provided that ICS would not deal with any other company in the HVAC industry. Complaint at ¶¶ 49–50. Plaintiff alleges that, in September 1983, defendants Lockformer and Mechanical Data became aware of the contract between CTI and ICS and, recognizing the potential market impact of CTI's new Auto–Plan product, entered into a conspiracy to, *inter alia*, misappropriate CTI's technology. Complaint at ¶¶ 51, 52. Plaintiff alleges that Mechanical Data approached ICS and promised to purchase thirty newly designed CAD systems for duct work if ICS would enter into a working relationship to design such a system, in breach of ICS's contract with CTI. Complaint at ¶ 54. Lured by this offer, plaintiff alleges, ICS began demanding increased advance payments from CTI and sought additional "unreasonable concessions" in an effort to justify its breach of contract and its planned dealings with Mechanical Data. Complaint at ¶ 56.

ICS brought an action against CTI in federal court in Louisiana, seeking damages and a judgment declaring CTI to be in default of the contract. CTI counterclaimed for breach of contract on several grounds, including nonperformance by ICS

as well as breach of the confidentiality and exclusive dealing obligations because of apparent ongoing negotiations between ICS and Mechanical Data. The court issued a temporary restraining order prohibiting ICS from further dealings with Mechanical Data on June 25, 1984 and, after a hearing in July 1984, converted that order into a preliminary injunction. Complaint at ¶¶ 58, 59. After a trial in 1986, the court issued a decision in favor of CTI, finding ICS in breach for failing to complete development of the program for CTI. The court, however, rejected CTI's alternative argument that ICS had breached the contract by disclosing confidential information to Mechanical Data. Specifically, the court found:

> Although testimony evidences similarities in the methodology, information, data, sequences, techniques and algorithms of the program being developed for Mechanical Data and the one designed by CTI, the court finds that Mechanical Data did not receive, use or benefit from any information CTI provided to ICS, albeit any latent intentions of ICS.

(Jacobson Aff., Ex. 2 at ¶ 57) Mechanical Data now argues that the issue of Mechanical Data's misappropriation of CTI's technology was determined in that lawsuit and that collateral estoppel prevents CTI from relitigating the issue here.

For a judgment in one litigation to preclude an issue raised in a later litigation, two requirements must be met: (1) the issue must be identical to the one actually decided in the prior judgment; and (2) the issue in the prior suit must have been "necessary and essential" to the earlier decision.[10] *RX Data Corp. v. Dep't of Social Services*, 684 F.2d 192, 197 (2d Cir. 1982). Plaintiff argues that (1) the court's finding on misappropriation of technology was not necessary to the judgment because the court found the defendant in that action liable on other grounds, (2) lack of discovery from Mechanical Data deprived

CTI of a full and fair opportunity to litigate, and (3) collateral estoppel is inappropriate because CTI was effectively deprived of its right to appeal because of ICS's bankruptcy. I find that the issue of misappropriation of technology was not necessary to the decision in the prior suit and, accordingly, do not reach plaintiff's other contentions.

The necessity requirement ensures that before a finding can have preclusive effect, it must command the highest level of care from the deciding court. This is especially true where, as here, the issue in the prior case was decided adversely to the party that prevailed in the ultimate judgment:

> "Application of the necessity principle is most clearly illustrated by findings that are contrary to the judgment in the sense that, standing alone, they would conduce to an opposite judgment.... Such findings have long been accepted as paradigms of the unnecessary conclusions that are not preclusive in later litigation."

18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction*, § 4421 at 199 (1981). *See also Balcom v. Lynn Ladder & Scaffolding Co.*, 806 F.2d 1127 (1st Cir.1986); *Raxton Corp. v. Anania Associates, Inc.*, 668 F.2d 622, 624 (1st Cir.1982). The main reason for denying issue preclusion to such contrary findings is that the finding cannot, as a practical matter, be tested by appeal. Wright, Miller & Cooper, § 4421 at 201. Apart from the lack of contest because ICS was bankrupt, no court of appeals would be receptive to an appeal of this contrary adverse finding by CTI, which was the prevailing party below. Moreover, the court rather enigmatically found no misappropriation "albeit any latent intentions of ICS." In other words, it appears the district court found some evidence of ICS' intention to misappropriate goods, although it also found no transfer of information to Me-

---

10. A third requirement—that the earlier decision be final—is conceded by both parties. Because ICS became insolvent and subsequently bankrupt after the decision, CTI admits it "did not bother" to enter final judgment and does not rely on this missing element to avoid collateral estoppel. *See* Plaintiff's Memorandum in Opposition to Defendant Mechanical Data's Motion to Dismiss or Transfer at 10 n. 4.

chanical Data. But if the court's judgment turned on this issue, the court would have had to flesh out in more detail the precise facts underlying its finding. Perhaps it might also have found that Mechanical Data too had similar bad intentions. As it was, because the judge found a breach of contract on other grounds, there was no reason to provide greater detail on this issue. That is precisely why such findings contrary to the thrust of the ultimate judgment are deemed suspect and not given preclusive effect, and will not be given such effect here.

### Counts V and VI: Inducing Breach of Contract and Interference with Advantageous Business Relations

These two causes of action, asserted only against defendants Mechanical Data and Lockformer, can be considered together. Plaintiff claims that defendants induced the breach of its contract with ICS in 1983–1984. Defendant correctly asserts that these causes of action are barred by the three-year statute of limitations in CPLR § 214(4), governing actions for injury to property. *Piracci Constr. Co., Inc. v. Skidmore, Owings & Merrill*, 490 F.Supp. 314, 317 (S.D.N.Y.), *aff'd without opinion*, 646 F.2d 562 (2d Cir.1980).

Plaintiff concedes that these claims are time-barred, but contends that defendants are equitably estopped to assert the statute of limitations because they hid their tortious conduct from plaintiff. Specifically, plaintiff asserts that principals of Mechanical Data testified in Louisiana federal court and assured the court there that the agreement between Mechanical Data and ICS was strictly conditioned on a prior termination of the CTI/ICS contract and that Mechanical Data would sever all relations with ICS if a preliminary injunction were granted in the case. In April 1985, however, a former ICS employee, Kenny Jones, contacted plaintiff and gave a sworn statement in which he explained that plaintiff's information had been used in adapting and modifying the CAD system for Mechanical Data, and that this system had in fact been shipped to Mechanical Data on the same day a temporary restraining order was en-

tered that would have blocked its transfer. *See* Plaintiff's Memorandum in Opposition to Defendant Mechanical Data's Motion to Dismiss or Transfer, Exh. F. Plaintiff thus argues that, contrary to Mechanical Data's assertions in court, defendant was receiving confidential information and thus inducing the breach of the confidentiality and no-dealing clauses in the CTI–ICS contract.

New York recognizes the doctrine of equitable estoppel where the plaintiff was induced by misrepresentation or deception to refrain from filing a timely action. *Simcuski v. Saeli*, 44 N.Y.2d 442, 406 N.Y.S.2d 259, 262, 377 N.E.2d 713, 716 (1978). But I am far from persuaded that defendant Mechanical Data's actions constituted misrepresentation. For example, assurances that Mechanical Data would cease its relationship if a preliminary injunction were entered are not belied by the fact that Mechanical Data was still dealing with ICS on the day the temporary restraining order was entered.

■■■ Even accepting plaintiff's allegations as true, however, equitable estoppel may not be invoked where any alleged misconduct by defendant ceased prior to the expiration of the limitations period, *Schroeder v. Brooklyn Hosp.*, 119 A.D.2d 564, 500 N.Y.S.2d 733, 734 (2d Dep't 1986), or where plaintiff had notice of its claim more than one year before the limitations period ran. *Demille v. Franklin General Hosp.*, 107 A.D.2d 656, 484 N.Y.S.2d 596, 597 (2d Dep't), *aff'd*, 65 N.Y.2d 728, 481 N.E.2d 569, 492 N.Y.S.2d 29 (1985); *Baratta v. Kozlowski*, 94 A.D.2d 454, 464 N.Y.S.2d 803, 806 (2d Dep't 1983). By its own admission, plaintiff learned of the "true nature of ICS' dealings with Mechanical Data" in April 1985. Plaintiff's Memorandum in Opposition at 20. Plaintiff still had more than two years until the statute of limitations ran in June 1987. Thus, plaintiff's failure to exercise due diligence renders estoppel unavailable to defeat defendant's statute of limitations defense. *Baratta*, 464 N.Y.S.2d at 806.

Accordingly, these two counts are dismissed as time-barred.

### Count VII: Conspiracy

■ An allegation of conspiracy does not state a separate cause of action, but rather "a rule of responsibility for the tortious actions of others." *Bridge C.A.T. Scan Associates v. Ohio–Nuclear, Inc.,* 608 F.Supp. 1187, 1193 (S.D.N.Y.1985) (Weinfeld, J.). Thus, if the underlying tortious acts alleged fail to state a cause of action, the conspiracy allegations must fall as well. The state law claims in the complaint concern the allegedly false comparative advertising memorandum distributed in 1985 and the two alleged acts of misappropriation of confidential information. Accordingly, plaintiff may attempt to prove a conspiracy in order to hold each defendant liable for the tortious acts of the other. But, insofar as Count VII purports to state a separate claim for relief, it is dismissed.

### Count VIII: The RICO Claim

Defendants Mechanical Data and Lockformer [11] advance three arguments to dismiss plaintiff's RICO claim: (1) the claim is untimely under the four-year statute of limitations as determined by the Supreme Court in *Agency Holding Corp. v. Malley–Duff & Assoc.,* 483 U.S. 143, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987); (2) the complaint fails to plead fraud with particularity as required by Fed.R.Civ.P. 9(b); and (3) the complaint fails to allege the requirement of "continuity" as required by decisional law.

#### A. Accrual of RICO Claim

Although claims for RICO injuries are governed by a four-year statute of limitations, the predicate acts that prove a pattern may go back ten years, because the statute defines a pattern as two or more predicate acts within ten years. 18 U.S.C. § 1961(5). The predicate acts plaintiff relies on are as follows:

1) Use of the mail and telephone to defraud CTI by falsely advertising the features of defendants' Duct Magic System in violation of 18 U.S.C. §§ 1341 and 1343 in January 1981;

2) Use of the mail and telephone to defraud CTI by misappropriating CTI technology from Cybermation in violation of 18 U.S.C. §§ 1341 and 1343 in the summer of 1982;

3) Receipt and transportation in interstate commerce of CTI technology having a value of more than $5000 which was misappropriated from Cybermation in violation of 18 U.S.C. §§ 2314 and 2315 in the summer of 1982;

4) Use of the mail and telephone to defraud CTI by falsely advertising the Vulcan System and issuing false statements about CTI's Auto–Plot product in 1982–83;

5) Use of the mail and telephone to defraud CTI by misappropriating CTI technology from ICS in violation of 18 U.S.C. § 1341 and 1343 in 1983–84;

6) Receipt and transportation in interstate commerce of CTI technology having a value of more than $5000 which was misappropriated from ICS in violation of 18 U.S.C. §§ 2314 in 1983–84;

7) Use of the mail and telephone to defraud CTI by falsely advertising the Vantage system and issuing false statements about CTI's Auto–Plan System in violation of 18 U.S.C. §§ 1341 and 1343 in 1985.

Complaint at ¶ 78. Certain of these acts, in reality, gave rise to the same racketeering injury—namely, 2 and 3, and 5 and 6. Accordingly, there are really only five acts: (1) the false advertisement in 1981; (2) the transfer of technology in 1982; (3) the false advertising in 1982; (4) the transfer of technology in 1983–84; and (5) the false advertising in 1985.

■ The Second Circuit has recently decided when a RICO action accrues. In *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1102 (2d Cir.1988), the Court held that "each time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages based on that injury accrues to plaintiff at the

---

**11.** Defendant Met–Coil also mistakenly moved to dismiss this claim, in which it is not charged.

time he discovered or should have discovered the injury." Two rules guide this inquiry into whether recovery may be had for the alleged injuries:

> The rule is that a cause of action accrues when new overt acts occur within the limitations period, even if a conspiracy was formed and other acts were committed outside the limitations period.... A corollary rule is that damages may not be recovered for injuries sustained as a result of acts committed outside the limitations period.

*State Farm Mut. Automobile Ins. Co. v. Ammann*, 828 F.2d 4, 5 (9th Cir.1987) (Kennedy, J., concurring) (cited in *Bankers Trust*, 859 F.2d at 1104).

Plaintiff filed this complaint on February 2, 1988. Thus, only injuries sustained four years before then are actionable. As for the first predicate act, the 1981 false advertisements, plaintiff conceded that it fell outside a six-year statute of limitations, so it would naturally not come within a four-year statute of limitations. The second predicate act, the transfer of Auto–Plot technology, is alleged to have occurred sometime in the summer of 1982. As plaintiff alleges that defendants first demonstrated the Vulcan system, which contained the misappropriated technology, in October 1982, plaintiff had knowledge of the injury on that date. Thus, damages from the second act are barred as well. As for the third act, the false advertising of the Vulcan system at defendants' open house, plaintiff admits that it became aware of these statements "on or about October 27,

1982." Complaint at ¶ 43. Damages from this act are barred as well.

The fourth act, the misappropriation of Auto–Plan technology, allegedly occurred in June 1984, and defendants introduced the Vantage system, which allegedly contained plaintiff's technology, in October 1984. Accordingly, plaintiff can recover damages for this injury. Finally, the fifth act, the false advertising in 1985, is clearly within the four-year limitations period. Accordingly, plaintiff may recover for damages sustained from these two injuries.

### B. *Rule 9(b)*

To establish a violation of 18 U.S.C. § 1962(c), plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R. L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Defendant Lockformer argues that plaintiff's RICO claim should be dismissed pursuant to Fed.R.Civ.P. 9(b) for failure to allege the underlying acts of any purported fraud with sufficient particularity.

Rule 9(b) provides in pertinent part that, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Because the predicate acts are alleged violations of the federal mail and wire fraud statutes, as well as alleged violations of 18 U.S.C. §§ 2314 and 2315 (transportation and receipt in interstate commerce of goods, ware or merchandise of a value of $5000, knowing the same to have been stolen, converted or taken by fraud), the RICO claim sounds in fraud.[12] As such, the com-

---

12. Plaintiff seizes on a footnote in *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 792 n. 7 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985), for the broad proposition that, because 18 U.S.C. §§ 2314 and 2315 are based on the misappropriation of property, they are not subject to the pleading requirements of Rule 9(b). Plaintiff utterly distorts the logic of *Seville*. Contrary to plaintiff's characterization, the Third Circuit faulted the lower court only insofar as it applied Rule 9(b) to an element of those offenses which did not involve fraud—the requirement of interstate transportation. In so doing, the Third Circuit explicitly endorsed the principle that the fraud element of §§ 2314 and 2315 must be pleaded with particularity. *Lewis v. Sporck*, 612

F.Supp. 1316, 1324 (N.D.Cal.1985), is not to the contrary, but supports the principle that Rule 9(b) should be applied if the "predicate act sound[s] in fraud." Plaintiff's contention that these statutes do not require a showing of fraud is similarly without foundation. As plaintiff has set forth no facts to support a theory that defendants actually stole or converted the confidential information from ICS or Cybermation, the only workable theory is that defendants defrauded plaintiff or ICS by misappropriating the technology through the assistance of ICS and Cybermation. This is exactly what plaintiff's brief argues. *See* Plaintiff's Memorandum in Opposition to Defendant Lockformer's Motion to Dismiss at 22.

plaint must meet Rule 9(b)'s standards for particularity. *See, e.g., Anitora Travel, Inc. v. Lapian,* 677 F.Supp. 209, 214 (S.D.N.Y.1988); *Moll v. U.S. Life Title Ins. Co.,* 654 F.Supp. 1012, 1034–35 (S.D.N.Y.1987); *Nevitsky v. Manufacturers Hanover Brokerage Services,* 654 F.Supp. 116, 120–21 (S.D.N.Y.1987); *The Limited, Inc. v. McCrory Corp.,* 645 F.Supp. 1038, 1041 (S.D.N.Y.1986).

The Second Circuit has held that "allegations, which fail to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b)." *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986). *Accord Zerman v. Ball,* 735 F.2d 15, 22 (2d Cir.1984). Further, Rule 9(b) pleadings cannot be based upon information and belief, *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972), unless the facts are "peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based." *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

■ As we have seen, there are but five acts alleged in the complaint giving rise to separate racketeering injury. Of these, the first, third and fifth are well enough pleaded. The second and fourth are not. The first such act is the false advertising in 1981 of the Duct–Magic system. Plaintiff specifies the defendant involved, Mechanical Data (Complaint at ¶ 30), the false statements (Complaint at ¶ 31), even attaching a copy of the advertisement as Exhibit B to the complaint, and why the statements were materially false and misleading (in that they alleged the Duct–Magic system "performs all layout work and pattern drawing" rather than being merely a blanking system). Complaint at ¶ 31. These allegations meet the pleading requirements of Rule 9(b).

Similarly, the third act, relating to false comparative advertising of defendants' Vulcan system with the Auto–Plot system, also states with particularity the roles of the two defendants, at least one specific day on which the misrepresentations were made, where they were made ("an open house in late October 1982") and, most importantly, the exact nature of the misrepresentations (misstatements of the electrical consumption and maintenance factors of plaintiff's Auto–Plot system). Complaint at ¶¶ 43. Plaintiff also attaches a letter it wrote to defendant Lockformer at the time complaining of the statements, and a letter distributed by Lockformer purportedly correcting the false statements—and, tellingly, indicating that the misrepresentations were made at "[CTI's] October open house." Complaint, Exh. F, G, H. Defendant faults this showing because CTI does not specify the precise defendant involved in the dissemination of this material, instead using the formulation "Lockformer and/or Mechanical Data." Complaint at ¶ 43. I could understand this concern if multiple parties were involved, *see, e.g., The Limited,* 645 F.Supp. at 1038, or if the two parties involved did not have clear notice of their respective alleged roles in the fraudulent activity. *See Mauriber v. Shearson/American Express, Inc.,* 546 F.Supp. 391 (S.D.N.Y.1982). Here, however, plaintiff's complaint recites that Lockformer markets the products, while Mechanical Data "actively assist[s] Lockformer in the marketing of the Vulcan and Vantage systems." Complaint at ¶¶ 5, 7. Thus, both defendants are informed of their respective roles in the dissemination of this fraudulent information. Accordingly, the third act meets the standard for Rule 9(b).

So too, the fifth act, involving the false comparative advertising in 1985, states with particularity the false representations of comparison between the Auto–Plan system and the Vantage System. Complaint at ¶ 69. Indeed, sixteen specific misrepresentations are alleged to have been made in a memorandum. *Id.* Moreover, plaintiff attached a copy of the memorandum in question, (Complaint, Exh. K), and detailed correspondence between plaintiff and defendant over these alleged misrepresentations. Complaint, Exh. L, M, N, O. Again, a specific defendant—Lockformer—is singled out, while defendant Mechanical Data is alleged to have assisted in the market-

ing. Thus, the fifth act as well is pleaded with sufficient particularity.

The second act centers on the alleged transfer of CTI Auto–Plot technology in 1982 through Cybermation. It is alleged that Cybermation hired a former Gerber employee with access to CTI's Auto–Plot technology; that Cybermation then announced the imminent marketing of a product similar to CTI's Auto–Plot; that, during the summer of 1982, defendants Lockformer "and/or" Mechanical Data arranged a series of meetings with Cybermation to gain access to CTI's technology; that Lockformer, indicating its intention to purchase Cybermation, gained access to the desired technology; and that such technology ultimately was received by both defendants. Complaint at ¶¶ 35–37. Defendants fault these allegations because they are all based on "information and belief" and thus do not meet the pleading requirements. Although it is true that the pleading requirement of personal knowledge is relaxed when facts are peculiarly within defendants' knowledge, plaintiff has not demonstrated that these facts are peculiarly accessible to defendants. For example, an independent company, Cybermation, and some of its employees were intimately involved in the alleged fraud. Certainly, then, others had at least some knowledge of these facts. Moreover, unlike the first, third and fifth acts, the second fails to specify the role of each defendant in the misappropriation. Although plaintiff avers that Lockformer alone declared its intention to purchase Cybermation, the company which held the meetings with Cybermation is not named, nor is the time and place of the actual act of fraud—rather it is "sometime in the summer of 1982." Indeed, plaintiff never makes it clear who did the defrauding: was it Cybermation, not a party to this case, or one of defendants? Accordingly, this predicate act fails to plead fraud with particularity.

Finally, the fourth act relates to the misappropriation of Auto–Plan technology through ICS. Complaint at ¶¶ 51–60. This information is not peculiarly within the knowledge of defendants; plaintiff, on this motion, produced deposition testimony by a former ICS employee, Kenny Jones, as to the specifics of the acts asserted here. It is alleged that "Lockformer undertook to finance and market the system if Mechanical Data could gain access to or otherwise produce a suitable CAD program. Upon information and belief, having secured Lockformer's potential financial support, Mechanical Data used the mail and telephone wires to approach ICS and promised to purchase thirty newly designed CAD Systems for duct work...." Complaint at ¶ 54. The exact date of fraudulent transfer of the technology is alleged here: namely, the day the temporary restraining order was entered in Louisiana federal court. Complaint at ¶ 58. However, as was true of the second act, although Mechanical Data is alleged to have made the offer to buy 30 CAD systems, there is no allegation which defendant—or whether ICS—committed the actual fraud against plaintiff. Indeed, ICS is alleged to have "joined the conspiracy...." Complaint at ¶ 55. This predicate act fails to meet Rule 9(b)'s particularity requirements.

Accordingly, both the second and fourth acts, relating to the misappropriation of plaintiff's Auto–Plot and Auto–Plan technology, are dismissed. The first, third and fifth acts are sufficient to meet the standard of Rule 9(b).

### C. Pattern Requirement

Defendants Lockformer and Mechanical Data next fault the surviving predicate acts—all of which involve false advertising—for failure to plead a pattern of racketeering activity as required by 18 U.S.C. § 1961(5). In *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14, the Court noted that the pattern requirement meant more than just two predicate acts; it required "continuity plus relationship." Pointing to recent Second Circuit precedent on the subject, *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), and *Albany Ins. Co. v. Esses,* 831 F.2d 41 (2d Cir.1987), defendants contend that, where the acts of an enterprise are directed toward a specific goal,

where the enterprise has a narrow purpose or where the alleged enterprise has ceased functioning, the enterprise is not sufficiently "continuing" to constitute an "enterprise." In this case, defendants argue, the false comparative advertising predicate acts were isolated and sporadic incidents which fail to meet the continuity requirement.

The Second Circuit, however, has recently admitted that its precedent in this area is "confusing" and, accordingly, is presently deciding a case *en banc* in order to clarify the law in this area. *Beauford v. Helmsley,* 843 F.2d 103, 110 (2d Cir.1988), *rehearing en banc granted* (April 1, 1988). Accordingly, this motion is properly denied, with leave to renew after the Second Circuit has issued its decision in *Beauford.*

\* \* \* \* \* \*

In sum, the Lanham Act and N.Y.Gen. Bus.Law §§ 349 and 350 claims are limited to recovery for the 1985 false comparative advertising. The common law unfair competition count is dismissed for failure to state a claim for relief. The claims for inducing breach of contract and interference with advantageous business relations are also dismissed, as is the conspiracy claim, as far as it purports to state a separate ground for relief. Defendant Estimation is dismissed from this case without prejudice as set forth below. Plaintiff's RICO claim is limited to damages incurred as a result of the fourth and fifth racketeering acts. The second and fourth predicate acts alleged in the RICO claim are dismissed for failure to plead fraud with particularity, but otherwise defendants' motion to dismiss the RICO claim is denied pending renewal of the motion after the Second Circuit's *en banc* decision in *Beauford.*

Defendants request that plaintiff not be granted leave to amend the complaint. Absent undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, or the futility of amendment, leave to amend should be "freely given." Fed.R. Civ.P. 15(a). *See also Devaney v. Chester,* 813 F.2d 566, 569 (2d Cir.1987). Although plaintiff has amended its complaint once,

that was purely a technical amendment substituting the name of Lion International, Inc. d/b/a Orange Systems for the party originally named, Orange Systems, Inc. Accordingly, leave to amend is granted, but only with regard to the misappropriation count against defendants Estimation and Orange Systems and the second and fourth predicate acts in the RICO claim.

SO ORDERED.