RAY THOMAIER, Appellant, v HOFFMAN CHEVROLET, INC., Respondent, et al., Defendant.

Second Department, November 27, 1978

APPEARANCES OF COUNSEL

*Meltzer, Levy, Goldstein & Levinson, P. C. (Michael A. Levy* of counsel), for appellant.

*Jaspan, Kaplan, Levin & Daniels (A. Thomas Levin* of counsel), for respondent.

## OPINION OF THE COURT

GULOTTA, J.

On January 4, 1978 plaintiff, Ray Thomaier, placed an order with the defendant dealer, Hoffman Chevrolet, Inc., for a specifically optioned, 1978 Limited Edition Corvette Coupe. The order form which was utilized in the transaction described the automobile and options desired by the plaintiff, stated its purchase price and provided for delivery to the purchaser "A.S.A.P." (as soon as possible). Plaintiff signed the order form in the place designated for his signature and gave the dealer a substantial deposit in the form of a check for $1,000 to be applied toward the purchase price. This check was subsequently desposited into the account of Hoffman Chevrolet and apparently cleared without incident.

On the same date, Hoffman placed a written order with defendant General Motors Corporation, Chevrolet Motor Division, for the 1978 Limited Edition Corvette Coupe which the plaintiff had just ordered. The order was placed on a form supplied by General Motors, was signed by the dealer, listed the plaintiff's name as "customer", and designated the type of order as *"sold",* rather than "stock" (i.e., for inventory). Thereafter, by letter dated April 19, 1978, plaintiff was notified by Hoffman that "market conditions" had made his "offer" unacceptable and that his deposit of $1,000 was being refunded. The vehicle was ultimately manufactured by Chevrolet and delivered to Hoffman. Upon the argument of this appeal, Hoffman asserted that the specific vehicle has since been sold to a third party.

The instant controversy revolves about the effect of certain language employed by Hoffman on its purchase order form. In block letters directly above the place where the buyer (e.g., the plaintiff) enters his signature, the form states "THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE." Then, directly below the line where the buyer signs, appear the words "ACCEPTED BY", followed by a blank line, beneath which appear the words

"DEALER OR HIS AUTHORIZED REPRESENTATIVE". Neither the dealer nor his authorized representative signed this order form. Accordingly, Hoffman argues, there was no acceptance and therefore no binding contract. In addition, the dealer argues that even if there was a contract, it is unenforceable by virtue of the Statute of Frauds (see Uniform Commercial Code, § 2-201).

Passing only upon the first issue, the Justice at Special Term granted Hoffman's motion for summary judgment dismissing the complaint and denied plaintiff's cross motion for summary judgment. Plaintiff has appealed. The order should be reversed insofar as it has been appealed from.

On the basis of the undisputed facts, a contract was formed as a matter of law no later than the time when the dealer, after having taken and retained plaintiff's substantial ($1,000) down payment, placed an order signed by it for the identical vehicle with the Chevrolet Motor Division of General Motors, designating the vehicle as "sold" and listing the plaintiff's name under the heading "Customer". Section 2-204 of the Uniform Commercial Code provides: "(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." (Cf. Uniform Commercial Code, § 2-207, subd [3].) The conduct of Hoffman herein was clearly sufficient to signify an acceptance, notwithstanding its conceded failure to sign the agreement (see *Price v Spielman Motor Sales Co.,* 261 App Div 626, 630 [absence of a written acceptance held unavailing where the defendant dealer had taken plaintiff's $50 check as a down payment, indorsed it and collected that amount through its bank; the court (per CLOSE, J.) stated: "That act creates an acceptance."]; compare and distinguish *Scutti Pontiac v Rund,* 92 Misc 2d 881 and *Antonucci v Stevens Dodge,* 73 Misc 2d 173 [dealers' form contracts similar to the one at bar construed strictly against them]). Section 2-204 of the Uniform Commercial Code further provides: "(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined."

Turning to the issue of the Statute of Frauds as a possible bar to recovery, the order form sent by Hoffman to General Motors, either taken alone or when read in conjunction with plaintiff's "purchase order", is a sufficient note or memorandum to satisfy the applicable statute, section 2-201 of

the Uniform Commercial Code, which provides, *inter alia:* "(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing." The Official Comment explains its intended effect (McKinney's Cons Laws of NY, Book 62½, Part 1, Uniform Commercial Code, § 2-201, pp 117-118):

"1. The required writing need not contain all the material terms of the contract and such material terms as are stated need not be precisely stated. All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction. It may be written in lead pencil on a scratch pad. It need not indicate which party is the buyer and which the seller. The only term which must appear is the quantity term which need not be accurately stated but recovery is limited to the amount stated. The price, time and place of payment or delivery, the general quality of the goods, or any particular warranties may all be omitted. * * *

*"Only three definite and invariable requirements as to the memorandum are made by this subsection. First, it must evidence a contract for the sale of goods; second, it must be 'signed', a word which includes any authentication which identifies the party to be charged; and third, it must specify a quantity."* (Emphasis supplied.)

Here, the order form sent by Hoffman to General Motors (1) evidences the existence of a contract, (2) is signed by the party to be charged (Hoffman) and (3) implicitly specifies the quantity involved (one). It is therefore sufficient under the applicable Statute of Frauds (cf. General Obligations Law, § 5-701). An otherwise sufficient writing directed to a third party is nowhere excluded (see 1 Anderson, Uniform Commercial Code [2d ed], § 2-201:31). However, assuming, *arguendo,* the absence of a sufficient writing, it is nevertheless my opinion that plaintiff's $1,000 part payment on the indivisible contract operated to take the agreement out of the Statute of Frauds

pursuant to section 2-201 (subd [3], par [c]) of the Uniform Commercial Code, which states:

"A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable * * *

"(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2-606)."

The effect of part payment on a contract for the sale of an *indivisible* item is not specifically treated by the Uniform Commercial Code, but the weight of authority is clearly to the effect that such payment will render an indivisible oral contract enforceable, notwithstanding the Statute of Frauds. As Dean William D. Hawkland observes (A Transactional Guide To The Uniform Commercial Code, vol 1, § 1.1202, pp 28-29):

"By failing to distinguish part payment from partial acceptance and receipt, the section does create one problem, neatly illustrated by *Williamson v. Martz* [11 Pa D & C 2d 33]. Here S orally agreed to sell to B two vats for a total price of $1600, B paying $100 on account. Subsequently B refused to take the vats, and S sued for breach of contract. B set up section 2-201 of the Code as his defense, and S countered that the partial payment took the matter out of the Statute of Frauds. The court held for B. Subsection 2-201 (3)(c) removes the Statute of Frauds only to the extent of payment. Since the payment of $100 cannot be translated into one vat (worth $800), S cannot enforce the contract to the extent of one vat. There being no way to divide up a vat, S is barred completely by the Statute.

"Though this case seems to follow the plain meaning of subsection 2-201 (3)(c), the result appears to be excessively restrictive. The payment of $100 indicates a contract whose quantity term must be at least one unit. The court, therefore, could safely enforce the agreement to the extent of one vat, and, thus, give the S a recovery of $800. The payment of $100, of course, does not necessarily prove a contract for two vats, and the court would not be justified in enforcing the contract for such an amount. But it is difficult to see how the contract could have contemplated less than one vat, assuming, as the court did, that vats are indivisible." (Accord, 1 Anderson, Uniform Commercial Code [2d ed], § 2-201:43.)

I find the foregoing logic persuasive and determinative on the facts of the instant case (see *Starr v Freeport Dodge,* 54 Misc 2d 271; *Cohn v Fisher,* 118 NJ Super 286; *Lockwood v Smigel,*

18 Cal App 3d 800; *Bertram Yacht Sales v West*, 209 S2d 677 [Fla]). As Judge TOMSON correctly observed in the *Starr* case *(supra,* p 274): "Any other conclusion would work an unconscionable result and would encourage rather than discourage fraud * * * The Statute of Frauds would be used to cut down the trusting buyer rather than to protect the one who, having made his bargain, parted with a portion of the purchase price as an earnest of his good faith." The facts of the case at bar serve to reinforce Judge TOMSON's observation.

Based on the foregoing, I believe that the order should be reversed insofar as it has been appealed from, Hoffman's motion for summary judgment denied, plaintiff's cross motion for summary judgment granted and the action remanded to Special Term for further proceedings not inconsistent herewith. In the event that it becomes apparent upon the remand of this action that specific performance (and any appropriate consequential damages) will no longer provide a viable remedy, the court shall proceed to order a full assessment of damages in lieu thereof.

LATHAM, J. P., SUOZZI, SHAPIRO and COHALAN, JJ., concur.

Order of the Supreme Court, Nassau County, entered July 12, 1978, reversed insofar as appealed from, on the law, with $50 costs and disbursements, the second decretal paragraph thereof, and so much of the first decretal paragraph thereof as denied plaintiff's cross motion for summary judgment, are deleted, plaintiff's cross motion for summary judgment is granted, the motion of Hoffman Chevrolet, Inc. for summary judgment is denied and the action is remitted to Special Term for further proceedings consistent with the opinion of Mr. Justice GULOTTA.