In the Matter of ALLSTATE INSURANCE COMPANY, Petitioner, v LESLIE G. FOSCHIO, as Commissioner of the Department of Motor Vehicles of the State of New York, Respondent.

Second Department, May 2, 1983

APPEARANCES OF COUNSEL

*Joseph F. Carlino, P. C.* (*Julian Jawitz* and *Daniel J. Lefkowitz* of counsel), for petitioner.

*Robert Abrams, Attorney-General* (*Ronald Glickman* of counsel), for respondent.

OPINION OF THE COURT

BROWN, J.

We consider here whether the practices employed by the petitioner insurance company in the settlement of an automobile collision claim violated the provisions of the Motor Vehicle Repair Shop Registration Act (Vehicle and Traffic Law, art 12-A, § 398 *et seq.*) and the regulations adopted thereunder.

The Motor Vehicle Repair Shop Registration Act was enacted in 1974 (L 1974, ch 946) to, *inter alia,* "further highway safety by promoting the proper and efficient repair of malfunctioning or disabled motor vehicles and to protect the consumers of this state from dishonest, deceptive and fraudulent practices in the repair of such motor vehicles" (Vehicle and Traffic Law, § 398-a). To effect its purposes, the act provides for registration of motor vehicle repair shops (Vehicle and Traffic Law, § 398-c), establishes requirements for the conduct of such businesses (Vehicle and Traffic Law, § 398-d), and authorizes the Commissioner of the Department of Motor Vehicles to impose various sanctions upon businesses which violate the act (Vehicle and Traffic Law, §§ 398-e, 398-f, 398-g, 398-i).

Petitioner, Allstate Insurance Company (Allstate), operates a drive-in appraisal service shop and claims adjustment office in Farmingville, New York, regulated under the Motor Vehicle Repair Shop Registration Act (see *Liberty Mut. Ins. Co. v Melton,* 88 AD2d 585; *Matter of Dunn Appraisal Co. v Melton,* 79 AD2d 707). On July 9, 1979, one of Allstate's policyholders brought a damaged 1975 Cadillac to an automobile repair shop known as Coloseum Collision. Coloseum's owner, James Gressalfi, initially estimated the cost to repair the vehicle to be $3,251.97. An adjustor from Allstate's Farmingville facility, Robert Besancon, examined the vehicle the following day and estimated the cost of repair at only $1,643.71. A major point of disagreement between the two estimators concerned whether the hood of the vehicle was repairable or whether it had to be replaced. In addition, there was a dispute as to whether used parts could be secured to repair certain items of damage and with respect to the estimated labor rate and time needed to straighten the vehicle's chassis.

Gressalfi also claimed that Besancon had overlooked certain items (i.e., a bumper guard, a tire, windshield molding, paint materials, a wheel cover and a front signal monitor) which he believed should have been included in reaching his estimate. Gressalfi conceded that Besancon had agreed to include the tire if, upon inflation, it was shown to be damaged. However, it was never inflated in the presence of Besancon. Gressalfi also conceded that he never pointed out the damage to the molding to Besancon and that the signal monitor was to come with a used fender, if one could be acquired.

A day or two thereafter, during a telephone conversation with Gressalfi, Besancon re-estimated the damages at $1,917.35, based upon his inability to locate a used fender, which had been a factor in the calculation of his original estimate. The other items of disagreement, however, remained unresolved. According to Besancon, on July 12, 1979 he sent the insured a check based upon this latter estimate. He went on vacation that evening and heard nothing further. Gressalfi, on the other hand, contended that he asked Besancon to reinspect the vehicle. Following this conversation, Gressalfi, although still dissatisfied, made no further effort to contact Allstate, but began the repair work on the vehicle pursuant to an authorization from the insured. He did, however, contact the Long Island Auto Body Repairmen's Association (LIBRA), which sent a representative to inspect the vehicle. The LIBRA representative, after inspecting the vehicle, indicated that Gressalfi's estimate was "in line", although perhaps a little too high on labor costs. At his suggestion, Gressalfi filed a complaint with the Department of Motor Vehicles (DMV).

DMV investigator Louis Feldsott inspected the vehicle on July 23, 1979 and prepared two estimates. The first estimate was in the amount of $2,781.79. The second estimate, which was based, *inter alia,* upon the possibility of acquiring a used nose (constituting the hood and other parts) was in the amount of $2,100.15.

On July 27, 1979, the DMV investigator called Allstate and asked to speak with John Bearese, a field inspector. Bearese was on vacation and, upon his return on August 2, 1979, he contacted the DMV investigator and agreed to

inspect the vehicle that same day. When he arrived at the shop, the vehicle was dismantled and the hood, as a result of an attempt to repair it, had numerous holes drilled through it. Bearese, after viewing the vehicle, re-estimated certain items of damage and reached a figure of $2,841.82 (a figure approximately $60 greater than the higher of the two estimates of the DMV investigator and approximately $900 more than Besancon's second estimate). An agreement was reached that day (August 2), based upon Bearese's estimate, and a supplemental check was issued to the insured on August 6, 1979.

Thereafter, based upon Gressalfi's complaint to DMV, a hearing was held before an administrative law judge pursuant to section 398-f of the Vehicle and Traffic Law. At the conclusion of the hearing, the administrative law judge found that Allstate was in violation of section 82.5 (h) of the DMV regulations (15 NYCRR), in that it engaged in a fraudulent or deceptive practice, and of section 82.4 (a) (11) of the regulations (15 NYCRR), in that it engaged in a course of conduct which unreasonably impeded or delayed a consumer's right to a fair recovery on his claim. He recommended that Allstate's license to operate its Farmingville facility be suspended for four days (two days for each violation).

The commissioner, after affirmance of the administrative law judge's findings by the Repair Shop Appeals Board (Vehicle and Traffic Law, § 398-f, subds 2, 3), concurred and Allstate thereupon commenced the instant proceeding.

■■ Upon review of the entire record, we conclude that the administrative findings herein are not supported by substantial evidence (cf. *Matter of Hannon v Cuomo,* 52 NY2d 775; *300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 181-182).

The term "fraudulent or deceptive practices", as used in relation to the regulation of commercial activity, is often broadly construed, but has generally been interpreted to include those acts which may be characterized as dishonest and misleading (see *People v Federated Radio Corp.,* 244 NY 33, 38-39; *Matter of Lefkowitz v Bull Inv. Group,* 46 AD2d 25, 28; *Matter of Prudential Adv. v Attorney-General*

*of State of N. Y.,* 22 AD2d 737; Executive Law, § 63, subd 12; General Business Law, § 349).

Since the purpose of such restrictions on commercial activity is to afford the consuming public expanded protection from deceptive and misleading fraud, the application is ordinarily not limited to instances of intentional fraud in the traditional sense (*Matter of State of New York v Bevis Inds.,* 63 Misc 2d 1088; see, also, *People v Federated Radio Corp., supra; Matter of Lefkowitz v Bull Inv. Group, supra*). Therefore, proof of an intent to defraud is not essential.

Nevertheless, the instant matter, addressing as it does an alleged fraudulent or deceptive practice in the *estimation* of damages, calls into question the good faith of the party making the appraisal. If the estimation of damages is rationally justifiable, although of a lesser amount than a comparative estimate, it would be inappropriate to characterize the appraisal as fraudulent.

In sustaining the charge that Allstate had engaged in a fraudulent or deceptive practice, the administrative law judge found that Allstate, in "its original estimate by Besancon was low on some labor items, overlooked some damaged items and called for straightening of the hood, which warranted replacement." Viewing the various and divergent estimates in this case as made by Gressalfi, Besancon, the LIBRA representative, the DMV investigator, and finally Bearese, the inexact nature of the process of estimating collision damages becomes quite apparent. The divergence among estimates may be based upon differing yet legitimate opinions as to which items are repairable rather than replaceable, the availability of used parts and the labor time required to perform certain work. While this court will not condone practices which inhibit the good-faith settlement of claims (see *Government Employees Ins. Co. v Commissioner of Motor Vehicles,* 94 AD2d 695 [decided herewith]; *Dunn Appraisal Co. v Foschio,* 94 AD2d 695 [decided herewith]), we nonetheless are mindful of the negotiation process involving repairmen and claims adjusters with respect to the value of the collision-caused damages. In this respect it should be noted that while Besancon's second estimate of $1,917.35 was approximately $865 lower than the DMV investigator's top esti-

mate of $2,781.79, Gressalfi's original estimate of $3,251.97 was some $1,151 greater than the DMV investigator's lower estimate of $2,100.15 and some $470 greater than the investigator's higher estimate. The final settlement of the claim, as noted, was greater than the DMV investigator's higher estimate.

While a comparatively low estimate of collision-caused damages may, in some instances, lend support to a finding of fraudulent and deceptive practices, such a finding may not be rationally based solely upon a finding of a low estimate without further evidence to show that not only was the estimate low, but that it was so out of line with other estimates that it could not have been attributable to differences of opinion by experts (see *Government Employees Ins. Co. v Commissioner of Motor Vehicles, supra; Liberty Mut. Ins. Co. v Melton*, 88 AD2d 585, *supra*). As evidenced by the figures stated above, that was obviously not the case here. The original estimate by Besancon was much more in line with the DMV investigator's low estimate than was Gressalfi's estimate. We do not believe that it can be said, on this record, that Besancon's original low estimate was so out of line as to support a finding that it was the product of fraud.

■ Viewing all of the evidence in the record, and particularly the vast differences among the estimates made by the various parties who inspected the vehicle, we conclude that there is a lack of substantial evidence to ·support the determination that Allstate engaged in a fraudulent or deceptive practice in making its estimates.

We turn next to the question of whether there was substantial evidence to support the determination that Allstate engaged in a course of conduct which unreasonably delayed or impeded a consumer's fair recovery under a policy of insurance. The administrative law judge found that Allstate had unreasonably delayed settlement of the claim in two respects. First, by not reappraising the vehicle until August 2, following the initial inspection on July 10; and second, by waiting a period of six days from July 27 when the DMV investigator contacted Allstate asking to speak to Bearese to August 2, when Bearese, upon return-

ing from vacation, was in contact with the DMV investigator.

The subject regulation (15 NYCRR 82.4 [a] [11]) makes it a violation if a repair shop: "has engaged in a course of conduct which unreasonably impedes or delays a consumer's right to a fair recovery pursuant to the provisions of an automobile insurance policy, the insurance law or regulations issued by the superintendent of insurance governing the evaluation and adjustments of claims." This provision, as indicated, requires "a course of conduct" which implies that Allstate's actions have an element of continuity (see *People v Hotchkiss*, 59 Misc 2d 823, 824-825). Accepting the administrative law judge's finding that Besancon improperly refused to accede to a request to reinspect the car, that single act does not constitute a course of conduct (*Liberty Mut. Ins. Co. v Melton, supra*). As to the second period of delay, that finding was based upon Allstate's failure to assign some employee other than Bearese to follow up on the DMV investigator's telephone call on July 27. We do not see in this situation indicia of a course of conduct unreasonably impeding the recovery on the claim. The record indicates that upon returning from his vacation, Bearese was immediately in contact with the investigator and promptly went to Gressalfi's shop to inspect the vehicle. Moreover, the testimony of the DMV investigator reveals only that he called to make an appointment to speak to Bearese, who was Besancon's supervisor, and was informed that Bearese was on vacation. The investigator did not state that he asked to have the matter referred to some other employee. He indicated only that apparently nobody else at Allstate's office could handle the claim. While the fact that Bearese was on vacation at the time of the claim undoubtedly caused some further delay, we are not prepared to conclude that such delay constituted a course of conduct.

In any event, the delay must be an unreasonable one and we do not view the delay here as such. The regulation under review makes reference to the provisions of the insurance policy, the Insurance Law and regulations of the Superintendent of Insurance. Under the regulations as they existed at the time in question, if a physical damage

claim were not resolved within 25 days from the date of receipt of notice of the claim, the insurer was directed to provide the insured with a written explanation of the reasons for the delay (11 NYCRR 216.7 [d] [2]; the applicable period has since been increased to 30 days).

It is of significance that an insurance company wears a second hat when it operates a shop which inspects motor vehicles for the purpose of estimating the cost to repair motor vehicles (Vehicle and Traffic Law, § 398-b, subd 2). It is thus that the provisions of the Motor Vehicle Repair Shop Registration Act and its attendant regulations govern the insurer's activities when it is so employed (*Liberty Mut. Ins. Co. v Melton, supra*). Those regulations do not provide for any specific time period within which a motor vehicle repair shop must complete its work. However, the regulations, in addressing the issue of "a course of conduct which unreasonably impedes or delays a consumer's right to a fair recovery", do make reference to the Superintendent of Insurance's regulations concerning the evaluation and adjustment of claims. Therefore, the time framework set forth in the Superintendent of Insurance's regulations relating to the settlement of insurance claims provides a sound foundation for evaluation of the asserted unreasonableness of the delay in this matter (see 11 NYCRR 216.7 [d] [1], [2]). Allstate received notice of the insured's claim on July 9, 1979, settled the claim on August 2, 1979 (24 days later), and mailed a check to the insured on August 6, 1979 (28 days later). Therefore, the time frame involved in this matter, from start to finish, was in compliance with the regulations established by the Superintendent of Insurance for settlement of claims and we are not prepared to say there was an "unreasonable" delay in the settlement of the claim herein.

■ Thus, we conclude that, viewing the record as a whole, there was not substantial evidence to support either the charge of fraudulent and deceptive practices or the charge of unreasonable delay.

We have considered the petitioner's other claims and find them to be without merit.

Accordingly, we grant the petition, annul the determination, and dismiss the charges against the petitioner.

O'CONNOR, J. P., BRACKEN and NIEHOFF, JJ., concur.

Petition granted, determination of the Commissioner of the Department of Motor Vehicles, dated April 7, 1981, annulled, on the law, without costs or disbursements, and the charges against petitioner are dismissed.