**LONE STAR INDUSTRIES, INC., Plaintiff,**

v.

**NELSTAD MATERIAL CORP. and James Capossela, Defendants.**

**No. 92 Civ. 3040 (VLB).**

United States District Court, S.D. New York.

Jan. 25, 1993.

Lawrence E. Tofel, Tofel Berelson & Salx, New York City, for plaintiff.

John A. Tartaglia, New Rochelle, NY, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

Lone Star Industries, Inc. ("Lone Star"), a supplier of stone to, and now a creditor of, Nelstad Material Corp. ("Nelstad") which is now in bankruptcy, seeks through this suit to enforce a personal guarantee of Nelstad's indebtedness to Lone Star, bearing the name of defendant James Capossela ("Capossela"), a principal of Nelstad. For the reasons which follow, I grant Lone Star's motion for summary judgment for the amount of Nelstad's debt of $580,-111.40 together with prejudgment interest based on the rate provided for by contract.

It is undisputed that Nelstad incurred the indebtedness involved, that Nelstad has not paid the debt, that Capossela was a principal of Nelstad who dealt with Lone Star in connection with Lone Star's extensions of credit to Nelstad, and that the guarantee attached to Lone Star's moving papers bears a signature which Capossela recognizes as resembling his signature. Capossela cannot recall, but does not deny, signing the guarantee.

In opposition to Lone Star's motion, Capossela makes several arguments, none of which I find convincing.

### II

■ Capossela points out that the guarantee was not attached to the complaint, but concedes that it is attached to the papers in support of Lone Star's motion for summary judgment and was shown to Capossela at his deposition. Capossela did not move to dismiss the complaint for insufficiency; moreover, notice pleading under the Fed.R.Civ.P. 8 permits allegations concerning governing documents even if not attached to the complaint. This is illustrated by Fed.R.Civ.P. Form 3, which sets forth an approved form of complaint on a promissory note that offers options of (a) attachment of the note, (b) quotation of it verbatim, or (c) an adequate description of the relevant portions of its contents.

The approach taken by the Federal Rules in this respect is the only pragmatic one, since some contract and other commercial cases (although not the present one) concern extremely lengthy documents which if attached in full would make pleadings unwieldy in the extreme. Even if absence of the guarantee as an exhibit to the complaint were a deficiency, the pleadings can be conformed to the proof under Fed.

R.Civ.P. 15(b) where, as here, there is no prejudice to the opposing party.

## III

■ Capossela argues that his failure to recall signing the note creates an issue of fact barring summary judgment to Lone Star, which bears the burden of proof on this element of its claim. I find no genuine issue of material fact, since Capossela, who does not claim inability to recognize his own handwriting, concedes that the signature on the guarantee resembles his signature and does not deny having signed the document. The surrounding facts corroborate the reasonableness of the conclusion that the signature resembling Capossela's on the guarantee is in fact that of Capossela.

It is undisputed that the document was found in the files of Lone Star, which had in fact been extending credit to Nelstad, of which Capossela was a principal and the representative in dealing with Lone Star. Under these circumstances it makes sense that Lone Star would have requested and Capossela granted a personal guarantee to protect Nelstad's supplier from the precise risk which became a reality here—the insolvency of Nelstad. In effect, the guarantee constitutes a waiver of the corporate veil— a demand often made by suppliers of closely held corporations and frequently agreed to by the principals of such corporations.

Capossela's contention that the signature on the guarantee may not be his lacks substance and is incredible in light of conceded or undisputed facts and his own testimony. Summary judgment under Fed. R.Civ.P. 56 was intended to deal with precisely this kind of situation. See *Citibank, NA v. Nyland, Ltd.*, 878 F.2d 620 (2d Cir. 1989) (upholding grant of summary judgment to party with burden of proof).

## IV

■ Capossela also points out that a blank space in a printed clause in the guarantee, permitting entry of a maximum amount for which the guarantor may be held liable, was left blank. He contends that this makes the guarantee incomplete, indefinite and hence fatally defective.

In *Deering Milliken Inc. v. Georgette Juniors*, 17 A.D.2d 405, 235 N.Y.S.2d 72 (1st Dept.1962), however, a similar contract was upheld against a similar claim of *per se* voidness. The Appellate Division, reversing a contrary ruling by Justice Owen McGivern in the Supreme Court, New York County and reported in 36 Misc.2d 123, 231 N.Y.S.2d 616, found that it was a reasonable interpretation open to plaintiff in that case that the blank space in the limitation clause resulted in a valid guarantee with no specific upper limitation on the liability created.

Capossela, relying on the fact that *Deering Milliken* merely held the defendant there not to be entitled to summary judgment voiding the guarantee involved, argues that summary judgment for Lone Star should likewise be denied. In evaluating this contention, it is important to note that Capossela has submitted no affidavits or other evidence supporting his argument that the intention of the parties was that the guarantee be void. Capossela has made no suggestion that were a trial to be held, any facts apart from those already submitted on the current motion would be developed.

Where historical facts are undisputed, their characterization may be more appropriate for the court to determine on motion than if there were genuine disputation over what happened. See *Maxtone–Graham v. Burtchaell*, 803 F.2d 1253, 1258 (2d Cir. 1986).

The interpretation urged by Capossela— that the intention of the parties might have been that the guarantee was nugatory— does not make sense in view of the background against which this contention must be judged. This is a business, not a consumer transaction.[1] There is no contention that this is a contract of adhesion between

---

**1.** New York legislation indicates that printed-form consumer agreements may justify closer scrutiny of the clarity of the documents to be enforced against a less knowledgeable party. See generally, e.g., N.Y.Gen.Oblig.Law § 5–702; N.Y.Gen.Bus.Law §§ 349–350, 399–c.

**150**

unmatched parties or that a take-it-or-leave-it provision was foisted on a less sophisticated trading partner. See *Muratore v. M/S Scotia Prince*, 845 F.2d 347, 351 (1st Cir.1988); Rakoff, *Contracts of Adhesion*, 96 Harv.L.Rev. 1173 (1983).

Capossela has not submitted affidavits asserting that he was rushed during the negotiations with Lone Star or had no opportunity to consult counsel or business associates before signing the guarantee. Rather, an arm's length business transaction was negotiated between a supplier and the principal of a substantial customer desiring to purchase significant quantities of stone from the supplier on credit, and the negotiation entailed the personal guarantee of a principal of the buyer. See *D.H. Overmyer, Inc. v. Frick Co.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); *Northwestern National Ins. Co. v. Donovan*, 916 F.2d 372, 374 (7th Cir.1990).

The conclusion that the blank upper limit of the Capossela guarantee did not vitiate the entire guarantee rests on the reality that an upper limit is not an essential aspect of a guarantee. There is no contention here that the law requires such an upper limit for a guarantee to be valid.

There is no contention here that any events likely to surprise the guarantor (Capossela), such as creation of indebtedness by the obligor in amounts or for purposes not contemplated by the guarantor, took place. Upholding the validity of the guarantee involved here does not necessarily mean that an upper limit could not be implied in an appropriate case.[2] See generally Farnsworth, *Disputes Over Omissions in Contracts*, 68 Colum.L.Rev. 860 (1968); Farnsworth, *Some Considerations in the Drafting of Agreements: Problems in Interpretation and Gap–Filling*, 23 The Record of the Ass'n of the Bar of the City of New York 1095 (1968).

**V**

Capossela contends that the guarantee violates the New York Statute of Frauds, NY Gen.Oblig.Law § 5–701(a)(2), which provides that an agreement which is a "special promise to answer for the debt ... of another person" must be supported by "some note or memorandum thereof ... in writing, and subscribed by the party to be charged therewith ..." I have found that Capossela signed the guarantee, thus satisfying that element of the statute. Capossela contends that the agreement is incomplete so long as the blank containing a potential ceiling limiting monetary liability under the guarantee has not been filled in. *Deering Milliken Inc. v. Georgette Juniors*, 17 A.D.2d 405, 235 N.Y.S.2d 72 (1st Dept.1962) expressly holds to the contrary, pointing out that commercial dealings depend on predictability and that courts should, accordingly, not strain for a construction that would defeat the obvious expectations of the parties.

To hold that an unfilled blank in a nonessential clause of a commercial agreement between equally sophisticated parties makes the entire signed agreement nugatory would involve the kind of strained interpretation rejected in *Deering*, and make the Statute of Frauds a means of perpetrating rather than preventing deceptive behavior. This is not a case where an agreement which would customarily be set forth in writing is sought to be established by oral testimony. Lone Star's claim does not confront the barrier of either a statute of frauds or its objectives.[3]

**VI**

Pursuant to Fed.R.Civ.P. 54(b), there is no just reason for delaying final judgment

---

2. This might occur, for example were a consumer contract or open-ended consumer credit account to be guaranteed, after which the original obligor borrowed more than was contemplated when the guarantee was executed. If a guarantee of indebtedness in such a case contained a blank space to enter a maximum limit, which was, like that in the present case, neither filled in nor crossed out, questions not presented in the present case might have to be considered.

3. See generally *Eastern Air Lines v. Air Line Pilots Ass'n*, 861 F.2d 1546, 1552 (11th Cir.1988); *Goldstick v. ICM Realty*, 788 F.2d 456, 466 (7th Cir.1986); *Roadway Express v. Jossy*, 853 F.2d 736, 739 (9th Cir.1988); Braunstein, *Remedy, Reason and the Statute of Frauds*, 1989 Utah L.Rev. 383.

in favor of plaintiff Lone Star Industries, Inc. on its fourth claim, against James Capossela. The only remaining aspects of the case concern a fraud claim against Capossela by Star which it is not pursuing at this time,[4] and claims against Nelstead which are now the subject of bankruptcy proceeding. I expressly direct entry of final judgment for plaintiff against James Capossela for $580,111.40 together with prejudgment interest based on contract provisions; plaintiff is directed to submit such a proposed judgment on notice.

The remaining aspects of the case not covered by such final judgment, namely the claims against Nelstad Material Corp. and the fraud claim against James Capossela, are placed on my suspense calendar; plaintiff is directed to submit a written report once every six months explaining whether and why these remaining aspects of this case should remain on the court's docket. In the event of failure to submit such a report, the portions of this case then on the suspense calendar may be dismissed without prejudice without further prior notice.

SO ORDERED.

---

**4.** Such claims may not be dischargeable in bankruptcy in the event that Capossela becomes insolvent.