**Michael JONES, M.D., Plaintiff,**

v.

**WIDE WORLD OF CARS, INC., Defendant.**

**No. 92 Civ. 4668 (VLB).**

United States District Court, S.D. New York.

May 6, 1993.

Andrew S. Fisher, Fisher & Fisher, New York City, for plaintiff.

Garry M. Bolnick, Kleinman, Saltzman & Goodfriend, West Nyack, NY, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This diversity action brought under 28 U.S.C. § 1332(a)(2) arises from the retention of a $50,000 deposit furnished by plaintiff

Michael Jones ("Jones") to defendant Wide World of Cars, Inc. ("Wide World"). Jones wired this sum to Wide World on August 21, 1990 in anticipation of purchasing a Ferrari F40 automobile ("F40"). Further negotiations failed to produce a written contract; Wide World refuses to return Jones' deposit.

Jones moves for summary judgment pursuant to Fed.R.Civ.P. 56 with respect to the following claims:

1) Wide World's retention of the $50,000 deposit constitutes common law conversion,

2) Wide World's retention of the $50,000 deposit constitutes a violation of N.Y.Gen. Bus.Law § 396–p(3), which requires, among other things, that retail dealers of new automobiles provide their customers with a written form stipulating that preliminary deposits are fully refundable,

3) Wide World engaged in false and deceptive advertising in violation of N.Y.Gen.Bus. Law § 350, and

4) Wide World engaged in deceptive business practices in violation of N.Y.Gen.Bus. Law § 349.

In addition to restitution of the deposit with interest, Jones seeks to recover compensatory damages, treble damages pursuant to N.Y.Gen.Bus.Law § 349(h), punitive damages and attorneys' fees. Jones also moves to sanction Wide World's president, Alberto Pedretti ("Pedretti"), and opposing counsel under Fed.R.Civ.P. 11.

Wide World challenges the existence of diversity of citizenship pursuant to 28 U.S.C. § 1332, and seeks to amend its answer pursuant to Fed.R.Civ.P. 13(f), to include a counterclaim for damages resulting from Jones' repudiation of the alleged purchase contract. Jones opposed Wide World's motion to amend by affidavit dated January 19, 1993. Wide World's attorney replied in turn by submitting an affidavit dated January 28, 1993 containing inflammatory accusations, signalling the current highwater mark in a rising sea of animosity.

I grant Jones' summary judgment motion insofar it seeks a ruling that he is entitled to the return by Wide World of his $50,000 deposit. In other respects, I deny Jones' motions without prejudice as premature. Wide World's motions to dismiss for lack of diversity of citizenship and to amend its answer to add a counterclaim for breach of contract are denied; I conclude that diversity exists and that no binding contract was entered into.

## II

In August 1990 Wide World placed an advertisement in the *Ferrari Market Letter* which stated in relevant part:

TO DATE:

Every new Ferrari sold by Wide World of Cars has been delivered at FACTORY LIST PRICE.

After reading this advertisement, Jones contacted Pedretti by telephone on August 17, 1990 to discuss purchasing an F40, a limited-production,[1] high performance sports car.

Although the parties sharply disagree over what terms, if any, they discussed or agreed upon during this conversation, on August 21, 1990 Jones wired a $50,000 deposit to Wide World. Approximately one week later Wide World mailed a purchase order to Jones dated August 27, 1990 which stated near the top of the page:

"THIS AGREEMENT IS NOT BINDING UNLESS SIGNED BY THE SELLER AND THE BUYER."

The form indicated that the price for the car was $800,000, approximately twice the F40's factory list price.

Jones had requested Wide World to mail the purchase order form to his parents' home in North Carolina. Jones claims that he intended to stay there while attending a medical conference in August 1990, but changed his plans so that the form was forwarded to him in California, and that

---

1. Since Wide World does not argue that the automobile in question was unique or specially manufactured for Jones, N.Y.U.C.C. § 2–201(3)(a) is inapplicable. Section 2–201(3)(a) provides that the UCC statute of frauds is inappli-

cable in certain circumstances "if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business ..."

"weeks" elapsed before the form reached him. Jones maintains that he rejected the purchase order upon receipt because the stipulated price of $800,000 was "at odds" with Pedretti's oral representations and Wide World's advertising.

Wide World offers a different explanation for Jones' rejection, which it claims was not received until October 7, 1990. Jones, it argues, was speculating on the price of the F40 and balked when the car's market value declined. As a result, Wide World claims that it lost the opportunity to sell the F40 at favorable prices existing in August 1990. Wide World also maintains that as of August 1990, every new Ferrari it sold had been delivered at factory list price.

Wide World also challenges Jones' claim to California citizenship, the basis for invocation of the diversity of citizenship jurisdiction of this court pursuant to 28 U.S.C. § 1332.

### III

■ It is incumbent upon the party invoking federal diversity jurisdiction properly to allege jurisdictional facts; if challenged, the invoking party has the burden of proving that diversity exists by a preponderance of the competent evidence. See *Thomson v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Kvos, Inc. v. Associated Press,* 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1939); *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

[2] For diversity purposes, citizenship means domicile, i.e. the place of the true, fixed, and permanent home and principal establishment to which a person has the intention of returning whenever absent. See *Wolfe v. Hartford Life & Annuity Ins., Co.,* 148 U.S. 389, 13 S.Ct. 602, 37 L.Ed. 493 (1893); *Stine v. Moore,* 213 F.2d 446, 448 (5th Cir.1954).

■ By affidavit dated January 19, 1993 Jones has submitted copies of his California State tax return, homeowners' insurance policy, and monthly gas and telephone bills. Wide World has not disputed the authenticity of these documents, and has failed to offer any evidence that would tend to prove that Jones is not a California resident. Accordingly, I find that Jones has met his burden of establishing facts sufficient to confer jurisdiction under 28 U.S.C. § 1332(a)(2).

### IV

A central question in this case is whether there was ever a contract enforceable by Wide World. Under the statute of frauds contained in the New York Uniform Commercial Code ("NYUCC"), a contract for the "sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought...." NYUCC § 2–201. No such writing exists here.

Wide World argues that the transaction falls within the "merchant's exception" to the general writing requirement. This exception allows a confirming memorandum to satisfy the statute if both parties are merchants and certain other conditions are met. Wide World maintains that Jones is a "merchant" within the meaning of § 2–201(2), and that the August 27, 1990 purchase order constitutes a confirming memorandum.

A merchant is defined under NYUCC § 2–104(1) as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

The official comment indicates that a person is a merchant only when acting in a business or professional capacity: "banks or even universities ... may well be 'merchants'" but "a lawyer or bank president buying fishing tackle for his own use is not a merchant." NYUCC § 2–104, Comment 2.

■ Jones states in his affidavit of January 19, 1993 that the only car he has purchased for more than $80,000 was a 348 Ferrari which he continues to own and utilize

for personal enjoyment. Wide World argues, without citation to authority, that whether Jones purchased "one, or fifty automobiles" is not dispositive; his ability to purchase an $800,000 automobile is sufficient to confer merchant status.

This novel interpretation cannot be reconciled with the plain language of NYUCC § 2–104(1). Financial status alone is insufficient to impart a consumer with the specialized knowledge and skill that merchants are deemed to possess. A distinction based on the financial status of a consumer would add to the cost, delay and uncertainty of litigation, contrary to the objectives of the UCC and to the detriment of predictability in business transactions. See Fed.R.Civ.P. 1, sentence 2; Llewellyn, "Meet Negotiable Instruments," 44 Colum.L.Rev. 298 (1944).

Wide World cites *Thomaier v. Hoffman Chevrolet, Inc.*, 64 A.D.2d 492, 410 N.Y.S.2d 645 (2d Dept.1978), for the proposition that a deposit on a limited production automobile is sufficient to establish an enforceable contract. In *Thomaier*, the plaintiff customer placed an order with an automobile dealer for a Limited Edition Corvette Coupe. The customer remitted a $1,000 deposit and signed the dealer's purchase order form, which stated: "THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE." *Id.* 410 N.Y.S.2d at 647. On the same day, the dealer placed a written order with the manufacturer for the customer's car. Four months later the dealer, who can be held to knowledgeability concerning matters affecting the industry and the transaction involved,[2] stated that "market conditions" had made plaintiff's "offer" unacceptable, and that his deposit was being refunded. *Thomaier* at 646–47.

The court in *Thomaier* found the dealer's conduct "sufficient to signify an acceptance, notwithstanding its conceded failure to sign the agreement." *Id.* at 647. Accordingly, the court held that the order form sent by the dealer to the manufacturer, "either taken alone or when read in conjunction with plain-

tiff's 'purchase order', is a sufficient note or memorandum" to bind the seller under U.C.C. § 2–201. *Id.*

■ In this case, the wiring of a deposit by Jones, the buyer, suggests that negotiations towards a contract were undertaken but there is no additional conduct on the part of Jones that might indicate either acceptance or a writing sufficient under *Thomaier;* Jones never signed the purchase order Wide World sent to him, and he notified Wide World that its offer was rejected.

## V

■ Wide World's retention of the $50,000 deposit was also improper under N.Y.Gen. Bus.Law § 396–p(3), which provides:

If a retail dealer of new motor vehicles accepts a deposit from a consumer but does not have a bona fide customer order as evidenced by a written sales agreement, that dealer shall give the consumer a written form indicating what, if any, options or equipment are desired by the consumer. This form shall be signed by the consumer and state conspicuously on its face:

"This Is Not An Order Form. There Is No Guarantee That The Motor Vehicle Offered To You Will Match The Description Indicated On This Form Or Will Contain These And No Other Options. Should You Decide Not To Purchase The Motor Vehicle, You Have The Right To Obtain A Full Refund Of Your Deposit."

The statute is instructive as an indication of standards of conduct that the legislature demands from automotive dealers who negotiate transactions involving consumer deposits. It supports the conclusion drawn from the NYUCC that Wide World has no claim to retention of Jones' deposit. See generally *Electrolux Corp. v. Val–Worth, Inc.*, 6 N.Y.2d 556, 569, 161 N.E.2d 197, 204, 190 N.Y.S.2d 977, 987 (1959); *Schuster v. City of New York*, 5 N.Y.2d 75, 85–86, 154 N.E.2d 534, 540, 180 N.Y.S.2d 265, 273–74 (1958); *Zendman v. Harry Winston, Inc.*, 305 N.Y. 180,

---

**2.** See Wiseman, *"... Karl Llewellyn and the Merchant Rules,"* 100 Harv.L.Rev. 465 (Jan. 1987); see also *Lone Star Industries v. Nelstad*

*Material Corp.,* 811 F.Supp. 147 (S.D.N.Y.1993); *Morgan v. McNiff,* 797 F.Supp. 325 (S.D.N.Y. 1992); and see, e.g., N.Y.Gen.Bus.Law § 399–c.

198 n. 3, 111 N.E.2d 871 (1953); Stone, "The Common Law in the United States," 50 Harv.L.Rev. 4, 12–18 (1936).

I need not reach the question of whether a separate private right of action for damages under § 396–p(3) apart from a suit for the penalties mentioned in § 396–p(4) can be inferred.

## VI

■ A further question is whether the electronic transfer of funds sent by the plaintiff-buyer to the defendant automobile dealer constitutes part performance of a contract for an indivisible item and therefore takes the transaction out of the Statute of Frauds under UCC 2–201(3)(c). It does not, for several reasons.

First, Wide World's own purchase order, referred to in part II above, makes it clear that Wide World's intention, communicated to Jones, was that no bilateral binding purchase agreement would exist unless the purchase order was signed by the purchaser as well as by Wide World: it was never signed by the purchaser.

Second, General Business Law § 396–p(3), quoted in part V, precludes use of down payments for automobiles as a substitute for a written contract signed by the buyer.

Third, ordinary public expectation would be flouted by a ruling that one who puts money down, becomes committed to a transaction for which the details have yet to be established. See generally N.Y.Gen. Oblig.Law § 5–702 (plain language law for consumer contracts). Cases dealing with the binding effect of down payments such as *Thomaier, supra,* have held the seller recipient of the down payment bound, but not the purchaser.

Fourth, cases under the statute of frauds itself suggest that it is the recipient accepting a down payment, not a buyer parting with the money, who may be bound. In *Starr v. Freeport Dodge, Inc.,* 54 Misc.2d 271, 282 N.Y.S.2d 58, 4 UCC Rep.Serv. 644 (Dist. Ct.1967), a purchaser claimed to have signed an order form for a new automobile which described the vehicle and also made a $25 down payment for the vehicle. The court found that acceptance of the deposit permitted the seller to be held bound. In *Thomaier v. Hoffman, supra,* the court held that the seller was bound when the plaintiff paid a $1,000 down payment and the defendant seller placed 'a signed order with the manufacturer for such a vehicle. In *Cohn v. Fisher,* 118 N.J.Super. 286, 287 A.2d 222, 10 UCC Rep.Serv. 372 (N.J.Super.Ct.1972), the court held that a check which bore the legend "deposit on Aux. Sloop D'Arc Wind, full amount $4,650", was sufficient. No such indicia of intention to form a binding purchase and sale contract are present here.

Thus the distinction between this case and those in which a deposit was considered part performance of an asserted binding contract was that in the cases finding a binding contract based on a deposit, it was the acceptor of the funds which was held bound, or that there were "plus factors" beyond the deposit alone to support the conclusion that a contract was made, or both. Plus factors have included a signed order form, a descriptive legend on a check, or an order from a dealer to a manufacturer.

A consumer putting down a payment is making a monetary sacrifice and showing good faith seriousness to encourage the seller to take the potential sale seriously and to hold the goods. To find that the down payment irrevocably commits the potential buyer when the details of the arrangement may still be shrouded in mystery would be contrary to ordinary experience and elementary fairness. See generally *Songbird Jet Ltd., Inc. v. Amax, Inc.,* 605 F.Supp. 1097 (S.D.N.Y.1985) (Weinfeld, J.).

A consumer down payment on a product not specially made for the buyer, standing alone, is entirely consistent with an articulated or implicit agreement that it would serve as "earnest money" to be refunded if the transaction was called off. It and cannot do duty in lieu of a writing to establish a binding purchase and sale contract. *Bordeau v. Oakley,* 185 A.D.2d 417, 585 N.Y.S.2d 623 (3d Dept.1992).

## VII

■ Since there never was a contract enforceable against him, Jones is entitled to

restitution of his $50,000 deposit and Wide World's motion to include a counterclaim for breach of contract must be denied. Wide World was obligated to return the deposit when Jones rejected its offer and demanded a refund. In failing to do this, Wide World incurred liability for conversion.

"Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Peters Griffin Woodward, Inc. v. WCSC, Inc.,* 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (1st Dep't. 1982). Money can be the subject of a conversion action if it is specifically identifiable. *Id.* This condition is met here since Wide World acknowledges withholding Jones' $50,000 wire transfer.

## VIII

Jones alleges violations of N.Y.Gen.Bus. Law §§ 349 and 350, providing that deceptive practices and false advertising done in the course of business, trade or commerce are unlawful. Unlike § 396–p(3), both statutes contain identical provisions authorizing private causes of action:

> ... any person who has been injured by reason of any violation of this section may bring an action ... to enjoin such unlawful act or practice, an action to recover ... actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y.Gen.Bus.Law § 349(h), 350–d(3).

Under these provisions, in addition to refund of Jones' deposit, which I have already determined is necessary, Jones may obtain injunctive relief if appropriate, and the court may award legal fees to a prevailing plaintiff.[3]

The elements of a claim under these consumer protection statutes are that 1) the practice or advertising was misleading in a material respect, and 2) that the plaintiff was injured. See *McDonald v. North Shore Yacht Sales, Inc.,* 134 Misc.2d 910, 513 N.Y.S.2d 590 (Sup.Ct.1987). It need not be shown that a deceptive act or false advertising amounted to fraud. See *Allstate Ins. Co. v. Foschio,* 93 A.D.2d 328, 462 N.Y.S.2d 44 (2d Dep't.1983); compare N.Y.Penal Law §§ 190.60, 190.65 (state scheme to defraud statute based upon federal mail fraud section, 18 U.S.C. § 1341).

There is evidence in this case which raises the inference that defendant's conduct may have constituted a deceptive practice, and that its advertising may have been misleading, but I find it would be premature to rule prior to trial that no genuine issue of material fact as to these claims exists.

## IX

Under Fed.R.Civ.P. 56(e), "affidavits" should be based upon personal knowledge or they should state sources of information and belief. Affidavits have been submitted in this case by both sides harshly criticizing their adversary, rather than merely providing facts, in ways that do not appear to meet these criteria.

Affidavits of this type do not promote the objectives of Fed.R.Civ.P. 1 (the just, speedy and inexpensive determination of every action) and are contrary to Canon 25 of the Canons of Professional Ethics, calling for adherence to customary behavior expected by the court of members of its Bar unless departure is justified.

To sanction either party in such a way as to benefit the other would be inappropriate since both appear to have engaged in such behavior.[4] It is also contrary to the objectives of Fed.R.Civ.P. 1 to permit side litigation over sanctions to interfere with adjudica-

---

**3.** The Attorney General possesses authority to seek injunctive relief under Executive Law § 63(12) as well as under Gen.Bus.Law §§ 349–350.

**4.** See *Donaldson v. Clark,* 786 F.2d 1570 (11th Cir.1986), *modified* 819 F.2d 1551 (11th Cir. 1987) (en banc); *Laitram Corp. v. Cambridge Wire Cloth,* 919 F.2d 1579 (Fed.Cir.1990).

tion of the merits where this unfortunate result can be avoided.

I am confident that these gentle comments will suffice to encourage the attorneys to refrain from filing further material of this type, and that I shall not hereafter need to consider other sanctions under Fed.R.Civ.P. 11 or under the court's inherent power, set forth in *Chambers v. NASCO*, —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). See *Roberts v. Lyons*, 131 F.R.D. 75 (E.D.Pa. 1990) (reprimand as sanction).

Consideration of the applications for sanctions which have already been filed is deferred until conclusion of the case.

## X

My ruling that Wide World is required to refund Jones' deposit is made pursuant to Fed.R.Civ.P. 56(d). The parties are directed to consider and discuss with each other whether this case may now be settled.

If settlement is not attainable at this time, the parties are directed to consider whether a separate judgment pursuant to Fed. R.Civ.P. 54(b) concerning payment of the deposit, or an expedited trial of the remaining issues in the case would be appropriate. A motion for a certificate pursuant to Rule 54(b) may be made without further leave if appropriate.

A further pretrial conference will be held on July 15, 1993 at 10 A.M. to establish a schedule for further steps in this litigation.[5]

**SO ORDERED.**

---

5. Defendant's papers on these motions have not been filed or docketed, presumably because defense counsel overlooked both customary practice in this court and Rule 1.6 of my Individual Rules of Practice, which states that "papers to be filed must be submitted to the Clerk of the Court for filing and should not be sent to chambers for filing." Counsel for defendant is directed to rectify this omission.